# Morrison Cohen LLP

aJason P. Gottlieb
Partner
(212) 735-8837
jgottlieb@morrisoncohen.com

October 18, 2022

**VIA EMAIL**

David A. Boag
Boag Law, PLLC
477 Broadway, Suite 2-270
New York, NY  10013

Re:   True Return Systems LLC v. Compound Protocol [sic], Case No. 1:22-cv-8483 (S.D.N.Y.)

Dear Mr. Boag:

This firm represents Compound Labs, Inc. ("Labs").  I write in connection with the complaint (the "Complaint") filed by True Return Systems LLC ("TRS") on October 5, 2022 in the above-referenced case.

For the reasons set forth below, Labs demands that TRS withdraw the Complaint within fourteen days of this letter.  In the event that TRS does not do so, Labs intends to vigorously protect its rights, including by invalidating TRS's patent and seeking an award of attorneys' fees.

*TRS's Prior Communications With Labs*

As you will recall, last year, by letter dated November 12, 2021, you contacted "Compound Finance" to assert that it was "using [TRS's] patented technology without a license," and purporting to offer or license TRS's "797 Patent."

In response, by letter dated December 22, 2021, I explained why the 797 Patent is plainly invalid.  I also explained that even if the 797 Patent were valid (which it is not), the Compound Protocol does not infringe the 797 Patent.  Finally, I notified you that your prior correspondence improperly conflated Labs (which is a company) with "Compound Finance" (which is the domain name of a website) with the "Compound Protocol" (which is nothing more than permissionless, open source software on the internet).  In view of those circumstances, I informed you that should TRS bring an action against Labs, we would vigorously defend the action, seek to invalidate the 797 Patent, and seek an award of attorneys' fees under 35 U.S.C. § 285.

*TRS's Election To File A Frivolous Claim Against A Non-Entity*

We were disappointed to learn that earlier this month – ten months after our correspondence – TRS commenced a case alleging infringement of the 797 Patent.  More troubling, however, was the fact that TRS named "Compound Protocol" as the sole defendant, and improperly conflated throughout the Complaint four distinct concepts: (i) the computer software commonly known as the "Compound

David A. Boag
October 18, 2022
Page 2

Protocol"; (ii) the technological structure for unaffiliated people to coordinate relating to the Compound Protocol (colloquially known as a decentralized autonomous organization, or "DAO"); (iii) the individuals who participate, from time to time, in the governance of the non-immutable aspects of the Compound Protocol by owning a COMP token and using it to vote; and (iv) Labs.

As you know, "Compound Protocol" is simply the colloquial name for a group of computer programs that carry out certain functions. Computer software is not, of course, a juridical entity. Software has no legal existence. Nor does software have the capacity to sue or be sued. *See* Fed. R. Civ. P. 17(b); *Roby v. Corporation of Lloyd's*, 796 F. Supp. 103, 105 (S.D.N.Y. 1992) ("Both capacity to be sued and legal existence are prerequisites to the suability of an entity . . . ."). This is as true for the smart contacts colloquially known as the "Compound Protocol" as it is for the computer programs Microsoft Excel and Adobe Photoshop, or open-source software like Linux.

Notwithstanding that you named "Compound Protocol" as the sole defendant, it is clear from both your prior correspondence and the Complaint itself that the target of TRS's patent infringement claim is Labs. You allege, for instance, that:

- "in January 2018, Robert Leshner [CEO of Labs] introduced the Protocol and the name "Compound" in an online blog post on Medium, and informed readers that Compound was in the process of developing the Protocol" (Complaint ¶ 5);

- "in September 2018, Compound Labs deployed the Protocol to the Ethereum mainnet" (*id.* ¶ 9);

- The protocol "was launched for the principal purposes of creating a cryptocurrency lending business and marketplace governed by the owners of the COMP token and [Labs] [and that Labs] and Robert Leshner have been holders of COMP tokens" (*id.* ¶ 10);

- "the system components and integrations of [the protocol] were provided by and performed by [Labs]" (*id.* ¶ 34);

- the protocol "has been periodically controlled by an administrator account which was originally operated by [Labs]" (*id.* ¶ 35); and

- "[Labs] develop[s] and promote[s] the Compound blockchain environment" (*id.* ¶ 40).

Myriad other allegations in the Complaint conflate the purported activities of Labs, COMP holders, and software itself. *See, e.g.*, Complaint ¶¶ 42-83.

Indeed, you recently directed a Tweet at the @compoundfinance Twitter account, purporting to send a letter to "Compound Finance (d/b/a Compound Protocol, Compound Finance, compound.finance) / COMP Owners and Compound Finance Governance," which conflates the protocol, the COMP

David A. Boag
October 18, 2022
Page 3

tokenholder – and Labs, which is the owner of the Twitter account @compoundfinance.   Once again, since you are sending communication to Labs, it is clear that your target is Labs.

*Labs Demands That TRS Withdraw The Complaint With Prejudice*

As I explained in my December 22, 2021 letter, the 797 Patent is invalid on the grounds of lack of novelty and obviousness.  The original application, which was filed as an expedited application, was allowed without any rejections or discussion of the prior art.  Unbelievably, the applicant did not even cite any prior art, most likely because the Satoshi Nakamoto Bitcoin white paper alone renders the 797 Patent obvious.  In the ten years between the Satoshi white paper and the 797 Patent, the blockchain and distributed ledger development community developed and issued a veritable mountain of work that serves as prior art, virtually all of which is in the public domain as open source software and methods.

Even if the 797 Patent was somehow valid, the computer program known as the Compound Protocol does not infringe it because it does not implement the claimed parallel storage of a differences layer that is linked and imputed to a distributed computer ledger.  To the contrary, the patent specification itself suggests that the patent's claims are inapplicable to blockchain consensus mechanisms used in the Compound Protocol.

In addition to the factual and legal unreasonableness of TRS's claim, Labs has a strong basis to conclude that TRS instituted this case with an improper motive.  First, we are aware that TRS has been trying to sell or license the 797 Patent to numerous other parties for a very long time.  We assume, from TRS's decision to file the Complaint almost a year after you first contacted us, that these efforts have not been met with any success, and TRS is now leveraging the court system as a means to monetize the 797 Patent.

Second, we are also aware that you have sent threatening letters to other companies in the blockchain space, as well as recently filed a sister patent infringement lawsuit against MakerDAO (1:22-cv-8478 S.D.N.Y.) (which you also filed against a defendant that, upon information and belief, has no legal capacity).  These facts, as well, confirm that you are attempting to use the *in terrorem* effect of a patent action to generate revenue from the 797 Patent.

Finally, you have deliberately filed the Complaint against a named defendant that is simply computer software; it has no legal existence, no capacity to be sued, and no ability to appear and mount a defense to your claim.  These facts, together with your prior correspondence, raise the specter that the purpose of this strategy is to avoid a costly adversarial litigation, thwart the risk that a defendant will appear who has the resources to invalidate the 797 Patent, and obtain a default judgment, which you will attempt to use as an instrument of estoppel or try to enforce against owners of COMP governance tokens on a misguided theory of joint and several liability.

Ten months ago, in my December 22, 2021 letter, I wrote to you on behalf of Labs, and informed you of the impropriety of filing any action on this patent at all, let alone filing against "Compound

David A. Boag
October 18, 2022
Page 4

Protocol" under some contrived theory that all COMP holders are somehow members of an unincorporated partnership or association.[1]  You have been on notice of these issues and circumstances for ten months, and yet you decided to file this Complaint against a non-justiciable entity anyway.

**Because the Complaint is legally and factually frivolous, objectively unreasonable, and brought with an improper motive, Labs demands that TRS withdraw the Complaint with prejudice within 14 days of this writing.**

Should TRS fail to withdraw the Complaint, Labs intends to vigorously defend the action.  The Complaint makes Labs the target of calumny, and TRS's spurious allegations against Labs implicates its valuable legal and business interests relating to the subject matter of the case.  Because of your intentional decision to name as the sole defendant one that has neither a legal existence, capacity to be sued, nor the ability to appear and mount a defense to TRS's frivolous claim, Labs intends to file a motion to intervene pursuant to Fed. R. Civ. P. 24 in order to challenge the validity of the 797 Patent, which we are confident will result in a finding of its invalidity.  *See e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, 262 F.R.D. 348, 252 (S.D.N.Y. 2009) (granting intervention to parties that had an interest in the litigation); *Oneida Group Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-cv-957 (ADS), 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) (same).  Needless to say, Labs does not, and could not, accept service on behalf of "Compound Protocol," which is not a juridical entity, unincorporated association, or anything else that has the legal capacity to be served or named in a lawsuit.

In addition to challenging the validity of the 797 Patent, Labs will seek an award of attorneys' fees pursuant to 35 U.S.C. § 285, which permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases."  For the reasons explained above, we are confident that the Court will agree that this meets the standards of an "exceptional case" warranting attorneys' fees.  *See Octane*

---

[1] Contrary to the allegations in your complaint, COMP holders are not members of an unincorporated partnership or association.  Mutual consent to form an association is not established by different people casting different votes on a DAO at different times.  Nor is every group that is not a corporation or a partnership automatically an unincorporated association.  *See Roby v. Corporation of Lloyd's*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992).  There is no "association" of COMP holders; the only thing such holders have in common is their possession of a COMP token.  The Complaint does not – because it cannot – evince any agreement or intent among COMP holders to join together to form a broad association.  *See, e.g.*, *PrimeSource Bldg. Prods. v. U.S.*, 494 F. Supp. 3d 1307, 1322 (U.S. Ct. Int'l Trade 2021) (holding that ad hoc group of domestic nail manufacturers were not an unincorporated association because, *inter alia*, the group had never met, transacted any business, or issued any public statements, or had a place of business, etc.); *California Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1068 (N.D. Cal. 1970) (holding that "the most informal and transitory of organizations" with "no charter, by-laws or articles, no office or place of business, no mailing address, no bank account, no assets or obligations, and [that] never transacted any business" and "never even met" was not an unincorporated association); *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 474 (La. 1990) ("[A]n unincorporated association, as a juridical person distinct from its members, does not come into existence or commence merely by ... the fact that a number of individuals have simply acted together; there must also be an agreement whereby two or more persons combine certain attributes to create a separate entity for a legitimate purpose.").

David A. Boag
October 18, 2022
Page 5

*Fitness v. ICON Health*, 572 U.S. 545, 554 (2014) (holding that exceptional cases are merely those that "stand[] out from others with respect to the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," which must be proven by a preponderance of the evidence); *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, No. 15-cv-4244 (JGK) (OTW), 2021 WL 1172335, at *3-4 (S.D.N.Y Mar. 26, 2021) (awarding defendants' attorneys' fees and costs in frivolous, meritless patent action where, among other things, "plaintiffs vigorously pursued untenable claims against competitors which were based on theories rejected in other cases").

Please be advised that should you not withdraw the Complaint, any and all documents and records that relate in any way to the issues in the action will be subject to discovery. Therefore, please retain any and all such documents and devices, and do not delete or discard them until this matter has been resolved. Those records include not just records about the patent, but the records about your copious attempts to sell or license the patent to various market participants, which apparently met with no success (which should be a strong signal to you about the validity and/or applicability of this patent).

This letter is not meant to be a recitation of all potential issues and facts related to this matter. Labs reserves all rights and waives none. If you have any questions, please do not hesitate to contact me.

Sincerely,

*Jason Gottlieb*

Jason P. Gottlieb