UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUE RETURN SYSTEMS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>COMPOUND PROTOCOL,<br><br>Defendant. | Case No. 1-22-cv-08483-JPC<br><br>**TRUE RETURN STYSTEMS, LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO SERVE DEFENDANT COMPOUND PROTOCOL BY ELECTRONIC MEANS** |

**PRELIMINARY STATEMENT**

On February 13, 2023, the Court ordered that Plaintiff True Return Systems, LLC ("TRS" or "Plaintiff") file a supplemental brief regarding Defendant Compound Protocol's status as an entity and how service of process may be effected on that entity. Dkt. 17.

Specifically, the Court ordered that this brief address three questions: (1) whether service of process may be effected upon an unincorporated association as an entity under New York law; (2) whether the Court must determine at this stage of the case whether Defendant is an unincorporated association or a partnership; and (3) whether Compound Protocol is properly treated as an unincorporated association or a partnership. *Id*. Those three questions are addressed below.

**ARGUMENT**

**I.    Defendant Compound Protocol is Properly Treated as a General Partnership**

Defendant is a decentralized autonomous organization that exists for the purpose of operating a cryptocurrency financial services business, which business has by some estimates generated over $460M in cumulative fees and $52M in revenue over the past 2.5 years. Boag Decl.,

1

¶¶ 4-5, Exhs. A-B.[1] Defendant holds itself out as "decentralized" and "autonomous," meaning that it is run by its members and not by any central authority. *Id*. Defendant also self-identifies as an "organization," i.e., a group of people organized for a joint purpose, also known as an association. This alone meets the criteria for a partnership under New York law:

> A partnership is an association of two or more persons to carry on as co-owners a business for profit and includes for all purposes of the laws of this state, a registered limited liability partnership.

N.Y. Partnership Law § 10.

When there is no written partnership agreement among the parties, a court must determine whether a partnership in fact existed from the conduct, intention, and relationship between the parties. *Czernicki v. Lawniczak*, 74 A.D.3d 1121, 1124 (N.Y. App. Div. 2010) *citing Community Capital Bank v. Fischer & Yanowitz*, 47 AD3d 667, 668, 850 NYS2d 508 (2008); *Brodsky v Stadlen*, 138 AD2d 662, 663 (1988).

The dividing line between an unincorporated association and a partnership is generally the presence of ownership, engagement in a business, and pursuit of profit. *See, e.g.*, *VIDIVIXI, LLC v. Grattan*, 155 F. Supp. 3d 476, 481 (S.D.N.Y. 2016) (finding the existence of a partnership where the partners (1) both contributed to businesses losses financially through labor and expertise; (2) worked together to design, fabricate, and market company products; and (3) held themselves out as partners).

Factors to be considered in determining the existence of a partnership include: "(1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and

---

[1] Citations to "Boag Decl." refer to the Declaration of David A. Boag, filed with Plaintiff's Motion for Leave to Serve Defendant Compound Protocol by Electronic Means, Dkt. 14. This Supplemental Briefing is further supported by the Supplemental Declaration of David A. Boag, cited herein as "Boag Supp. Decl."

control, (5) join liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization." *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (N.Y. App. Div. 1988) (finding no partnership existed where there was no indication that plaintiff was liable for losses of the enterprise and made no management decisions). *Cf. Czernicki, 74 A.D.3d* at 1124 (N.Y. App. Div. 2010) (finding a partnership using these same factors).

Compound Protocol is comprised of groups of voting and governing owners, software coders, and system administrators who collectively deploy and maintain software and devices which operate on, or are connected to, a blockchain. *See* Complaint, ¶ 6. Joint management and control are central to Defendant's enterprise.

Defendant engages in shared management and control among its partners. Defendant's COMP token gives its holders a proportional interest in Compound Protocol as well as rights to propose, direct, and vote on Compound Protocol governance. Boag Decl., ¶ 6, Exh. C.

Consistent with traditional partnerships, Compound's governance and voting are highly concentrated among a small number of blockchain identities. In three recent governance matters reported on the Compound Governance Overview portal, 10 or fewer individual blockchain identities cast between 80% to 99% of the total votes. *See* Complaint ¶ 36; Boag Supp. Decl. ¶ 4, Exh. Y.

Defendant has two or more owners, meeting the statutory requirement for ownership. Jake Chervinsky, Defendant's general counsel, described Defendant's ownership structure:

> [W]e launched an on-chain system that freely and continuously distributes COMP tokens to users of the Compound protocol. The user distribution system is a critical element of community governance, *ensuring that the protocol's users are also its owners and managers*.

Boag Supp. Decl. ¶ 5, Exh. R.

3

Defendant is also unequivocally a business. Its self-described purpose is profits through earned interest and retaining fees for its treasury:

> Compound is a protocol on the Ethereum blockchain that establishes money markets, which are pools of assets with algorithmically derived interest rates, based on the supply and demand for the asset. Suppliers (and borrowers) of an asset interact directly with the protocol, earning (and paying) a floating interest rate, without having to negotiate terms such as maturity, interest rate, or collateral with a peer or counterparty.

*See* ECF No. 1, Exh. 2 "Compound: The Money Market Protocol". See also Boag Supp. Decl. ¶ 6, Exh. S ("If the interest rates in Compound earn more than 4% over time, ***the business will make money***") (emphasis added).

Further, Defendant takes its treasury assets from profits to benefit Compound and its stakeholders and tokenholders retain governance over accruals. In other words, it distributes and shares profits among its owners:

> We propose to start a program called the Compound Grants Program ("CGP"), which will provide funding to projects, ideas, and events that benefit Compound and its stakeholders. If approved, funding for the program will come from Compound's treasury, which currently holds ~200k COMP (~$95mm as of 03/01/21).
>
> \* \* \*
>
> As a reminder, the treasury currently accrues 0.5 COMP per block, spends 0.352 COMP per block on liquidity incentives, and saves the balance of 0.148 COMP per block for governance by tokenholders.
>
> \* \* \*
>
> [I]f we find out $2mm is not enough money to fund all of the high quality opportunities, we as a community may decide we need to create a larger allocation for grants. On the flipside, if we find out $2mm is too much, all unspent funds will be returned to the community treasury for use at a later time."
>
> \* \* \*
>
> As part of the program, our intention is to fund projects, ideas, and events that directly benefit Compound and its stakeholders. While there may be opportunities

> to fund projects, ideas, and events that indirectly benefit Compound, these opportunities fall outside the scope of this program.

Boag Supp. Decl., ¶ 7, Exh. T.

Defendant proposes to make distributions that "maximize profits," another hallmark of the for-profit business required by the statute:

> Rather than distributing massive amounts of tokens arbitrarily to markets, I propose changing the existing rewards program (as just one of our rewards programs) to utilize COMP rewards to: 1. Strategically incentivize growth while ***maximizing profits*** (minimizing losses), and 2. Maintain minimum market sizes

Boag Supp. Decl., ¶ 8, Exh. U (emphasis added).

Lastly, Defendant publishes public details on its performance and in this case, losses:

> A few weeks ago, Compound suffered an exploit that led to the loss of ~$50 million 38 worth of COMP. The exploit happened due to a process failure in the governance process: a governance proposal that tweaked COMP distribution rates (Proposal 62 45) had a flaw that allowed certain lenders on Compound to drain the treasury for hundreds of millions of dollars worth of COMP.
>
> * * *
>
> Compound needs an auditor as soon as possible, and the audit firms have a business to run and need to assign resources to their customers ahead of time. In short, we need a process for picking the vendor of choice.

Boag Supp. Decl., ¶ 9, Exh. V.

These losses are shared by holders of the COMP token and partners in the organization.

Boag Supp. Decl., ¶ 10, Exh. W.

Defendant Compound Protocol meets both the statutory definition of a partnership under New York law and the factors set forth by courts to make a factual determination on whether a partnership has been formed. Here, Defendant's sharing of profits through distributions, sharing of losses, and strong joint management mechanism that enables partner control and authority in

proportion to the partner's holdings in the organization, all make clear that a general partnership has been created under New York law.[2]

## II. Service of Process May Be Effected on an Unincorporated Association by Service on the President or Treasurer as a Surrogate for the Whole Organization

An unincorporated association may exist under New York law where an organization of a body of persons exists for some common enterprise exists. *Meinhart v. Contresta*, 194 N.Y.S. 593, 594 (Sup. Ct. 1922). Unlike a general partnership, the unincorporated association it is not a legal entity separate from the persons who compose it. *Id*. *See also Pascual v. Rustic Woods Homeowners Ass'n, Inc.*, 134 A.D.3d 1006, 21 N.Y.S.3d 687 (N.Y. App. Div. 2015) (finding a condominium complex to lack be an unincorporated association lacking legal existence separate and apart from its individual members).

Its lack of status as a legal entity notwithstanding, an unincorporated association may nonetheless be subject to suit. NY CPLR § 1025. Because an unincorporated association lacks entity status, and to obviate the need to personally serve scores of individuals, NY CPLR § 1025 requires that service be made "against the president or treasurer of an unincorporated association on behalf of the association in accordance with the provisions of the general associations law." *Id*. See also New York Consolidated Laws, General Associations Law § 13 ("An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or

---

[2] It should be noted that extensive secondary authority supports DAO liability as a partnership. For example, the crypto general counsel of Andreessen Horowitz, a leading venture capital firm, recently co-authored a whitepaper in which he noted that, in reference to DAOs: "[f]rom a legal perspective, when two or more individuals are engaged in even a tenuous business relationship, the imputed structure is that of a general partnership." Boag Supp. Decl., ¶ 11, Exh. X, pp. 12-13.

claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally.")

As a DAO, Defendant's operations by design lack a president. There is no "head" of Defendant, a self-stylized distributed autonomous organization. Rather than having a centralized treasurer, all holders of the Compound Protocol token "COMP" collectively execute the treasurer function by proposing and voting on treasury activities published and debated on the Compound Community Forum governance site (www.comp.xyz), and subsequently voted on through a combination of the governance site and the Compound Protocol voting site (comp.vote). Boag Supp. Decl., ¶ 7, Exh. T. The administration of the financial assets and liabilities is thus managed by all members of Defendant's DAO.

In one recent example, Defendant evaluated the propriety of maintaining a $250M surplus buffer a proposal to increase the financial resiliency of Defendant and act as "the primary insurance pool for Compound Protocol." (Boag Decl., ¶ 16, Exh. L). This proposal was evaluated by the organization and voted on by holders of the COMP token. *Id*. Compound Protocol is the treasurer and the treasurer is Compound Protocol.

Similarly, the "president" of Defendant is the collective of all holders of the COMP token and not any one individual. The collective Compound Protocol is the manager, which Plaintiff has named in the Complaint. Further, the founder of Defendant has taken a broad position on the management of Defendant's organization:

> Who controls the Compound protocol? Compound is managed by a decentralized community of COMP token-holders and their delegates, who propose and vote on upgrades to the protocol."

Boag Supp. Decl., ¶ 7, Exh. T.

Plaintiff submits that it has already complied with NY CPLR § 1025 by naming all holders of the Compound Protocol token "COMP" who collectively execute the treasurer function and collectively fill the role of a "president" through collective management of the organization.

However, filing suit in the name of the unincorporated association and not that of its president or treasurer is by its proper name is correctable and does not go to the jurisdiction of a court over the parties. *Motor Haulage Co. Inc. v. Int'l Bhd. of Teamsters*, 298 N.Y. 208, 81 N.E.2d 91 (N.Y. 1948) (holding that naming an unincorporated association in a suit by its proper name rather than the name of a president or treasurer "is not jurisdictional and can be corrected. Montalvo v. Bakery and Confectionery Workers Intern. Union of America Local No. 3, AFL-CIO, 524 N.Y.S.2d 249, 137 A.D.2d 506 (N.Y. App. Div. 1988). *See also Motor Haulage Co. Inc. v. Int'l Bhd. of Teamsters*, 298 N.Y. 208, 81 N.E.2d 91 (N.Y. 1948) (finding that failure to designate a president or treasurer "is an irregularity which may be corrected in the absence of prejudice to a substantial right of any party").[3]

Should the Court determine that Defendant is an unincorporated association, Plaintiff requests leave to amend the Complaint to name specific individuals as treasurer and for an order permitting electronic service on those individuals.

---

[3] In a recent case of first impression, a Northern District of California court found that a DAO could be subject to suit as an "unincorporated association" under California law. *See Commodity Futures Trading Comm'n v. Ooki Dao*, No. 22-cv-05416 (N.D. Cal. 2022), Dec. 20, 2022, Order. The Court found that Defendant Ooki DAO could be subject to suit in California, though California Civil Procedure Code section 369.5(a) differs from NY CPLR § 1025 in that the California statute treats unincorporated associations and partnerships equally and does not impose the individual service requirements of the New York statute. *See* California Civil Procedure Code section 369.5(a): "A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known." The CFTC case thus supports the concept that a DAO may be sued but does not address the specific unincorporated association or partnership issue present here.

**III.     Plaintiff Takes the Position that Defendant is a Partnership, Even Though the Court Need Not Determine at This Stage of the Case Whether Defendant is an <u>Unincorporated Association or a Partnership</u>**

While Plaintiff takes the position that Defendant is in fact a partnership, the Court need not make that determination at this time. As discussed in Sections I and II above, Plaintiff has met the criteria for filing suit against either a partnership or unincorporated association under CPLR § 1025. As such, Defendant may be sued pursuant to F.R.C.P. 17(b)(3).

* * *

Based on the foregoing, Plaintiff requests that the Court direct that service of process on Compound be made as requested in Plaintiff's Motion for Leave to Serve Defendant Compound Protocol by Electronic Means.

Dated: February 27, 2023                            Respectfully submitted,

BOAG LAW, PLLC

By: _____
David A. Boag (DB9899)
447 Broadway, Suite 2-270
New York, NY 10013
(212) 203-6651
dab@boagip.com

*Attorneys for Plaintiff True Return Systems LLC*