UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUE RETURN SYSTEMS LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>COMPOUND PROTOCOL,<br><br>    Defendant. | Case No. 1:22-cv-08483 |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>COMPOUND LABS, INC.'S MOTION TO INTERVENE</u>**

MorrisonCohen LLP

909 Third Avenue, New York, NY 10022-4731 • p:212.735.8600 • f:212.735.8708

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT OF FACTS ........................................................................................................ 2

I.      BACKGROUND – BLOCKCHAIN .............................................................................. 2

II.     DEVELOPMENT AND LAUNCH OF COMPOUND PROTOCOL ............................. 3

III.    THE '797 PATENT ....................................................................................................... 4

IV.    PLAINTIFF ATTEMPTS TO SHOP ITS SHAM PATENT .......................................... 5

ARGUMENT ............................................................................................................................... 7

I.      LABS IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT ........................... 7

      A.    Labs' Motion to Intervene Is Timely ................................................................. 8

      B.    Labs Claims an Interest in the Subject Matter of the Action ............................. 9

      C.    Denial of Labs' Motion Will Impair Labs' Ability to Protect Its Interests ....... 10

      D.    Labs' Interest Is Not Adequately Represented by Existing Parties ................. 11

II.     ALTERNATIVELY, LABS SHOULD BE PERMITTED TO
INTERVENE IN THE COURT'S DISCRETION ....................................................... 12

CONCLUSION ......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Arista Recs., Inc. v. Dalaba Color Copy Ctr., Inc.*,
   No. 05-CV-3634 (DLI)(MDG), 2007 WL 749737 (E.D.N.Y. Mar. 7, 2007) ..........................8

*Bionpharma Inc. v. CoreRx, Inc.*,
   No. 21-CV-10656 (JGK), 2022 WL 580767 (S.D.N.Y. Feb. 24, 2022)..................................12

*Brennan v. N.Y.C. Bd. of Educ.*,
   260 F.3d 123 (2d Cir. 2001).............................................................................................7, 11

*Building. & Realty Inst. of Westchester and Putnam Cntys., Inc. v. State of N.Y.*,
   No. 19-CV-11285 (KMK), 2020 WL 5667181 (S.D.N.Y. Sept. 23, 2020)...............................9

*Degrafinreid v. Ricks*,
   417 F. Supp. 2d 403 (S.D.N.Y. 2006)....................................................................................12

*Donaldson v. U.S.*,
   400 U.S. 517 (1971)................................................................................................................9

*Honeywell, Int'l Inc. v. Audiovox Communications Corp.*,
   Nos. Civ.A. 04–1337–KAJ, Civ.A. 04–1338–KAJ, Civ.A. 04–1536–KAJ,
   2005 WL 2465898 (D. Del. May 18, 2005).....................................................................10, 13

*Marcelo Burlon S.R.L. v. Ailei Fashion*,
   No. 19-CV-11336 (VSB), 2022 WL 3925159 (S.D.N.Y. Aug. 31, 2022) ...............................7

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
   471 F.3d 377 (2d Cir. 2006)..............................................................................................8, 10

*Mortgage Lenders Network, Inc. v. Rosenblum*,
   218 F.R.D. 381 (E.D.N.Y. 2003) ............................................................................................8

*Olin Corp. v. Lamorak Ins. Co.*,
   325 F.R.D. 85 (S.D.N.Y. 2018) ............................................................................................12

*Roby v. Corporation of Lloyd's*,
   796 F. Supp. 103 (S.D.N.Y. 1992).........................................................................................11

*Tachiona ex rel. Tachiona v. Mugabe*,
   186 F. Supp. 2d 383 (S.D.N.Y. 2002).....................................................................................7

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972)...............................................................................................................11

*U. S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ...................................................................................... 11, 12

*U.S. v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) ................................................................................................ 13

*United States v. N.Y.C. Hous. Auth.*,
   326 F.R.D. 411 (S.D.N.Y. 2018) .................................................................................... 12

*United States v. Yonkers Bd. of Educ.*,
   801 F.2d 593 (2d Cir. 1986) ............................................................................................. 8

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990) ............................................................................................... 9

**DOCKETED CASES**

*True Return Systems LLC v. MakerDAO*,
   Case No. 1:22-cv-08478-VSB (S.D.N.Y.) ........................................................................ 6

**STATUTES & RULES**

Fed. R. Civ. P. 4(d) ................................................................................................................. 6

Fed. R. Civ. P. 17(b) ............................................................................................................. 11

Fed. R. Civ. P. 24(a) ............................................................................................................... 1

Fed. R. Civ. P. 24(a)(2) ............................................................................................... 7, 8, 13

Fed. R. Civ. P. 24(b) ......................................................................................................... 1, 12

Fed. R. Civ. P. 24(b)(1) ........................................................................................................ 13

This litigation concerns the efforts by Plaintiff, a quintessential "patent troll," to surreptitiously seize exclusive rights over long-standing blockchain technologies that have lay in the public domain for at least fifteen years. In 2018, Plaintiff obtained a patent registration for technology that has been published and obvious since at least 2008. It filed a misleading patent application that failed to identify any applicable prior art, and duped the Patent Office by using unusual terminology to disguise the obviousness of the invention. After obtaining the registration, Plaintiff attempted for years to sell or license its patent, pitching threats – coupled with offers to sell the patent – to many participants in the blockchain space. But to anyone knowledgeable in the industry, Plaintiff could not disguise that the patent was a sham. Nobody bought it.

Unable to monetize the patent through sale or intimidation, Plaintiff then filed this litigation. But in doing so – both here, and in a "sibling" litigation – it deliberately brought the case not against an actual person or company, but against a collection of open source software, a non-entity defendant with no juridical existence, and no capacity to defend against the spurious allegations asserted, or to challenge the validity of patent. Plaintiff's action is specifically designed to set the stage for a default judgment and validation of a sham patent, as Plaintiff seeks to avoid any real parties in interest and take advantage of the decentralized nature of blockchain technologies to slip one past the federal courts, much as Plaintiff slipped this sham by the patent office. Plaintiff would have undoubtedly followed that act by wielding that sham patent, and a sham default judgment, to threaten and attempt to shake down users of the software.

On this motion, Compound Labs – the software developer that first created the Protocol – seeks to intervene as of right or, in the alternative, permissibly pursuant to FRCP 24(a) and 24(b). Labs is repeatedly mentioned in the Complaint, and acknowledged to be the main party responsible

for developing the Protocol. The Complaint even alleges that Labs, as a COMP token holder, can be held personally liable for any infringement by the Protocol.

Labs no longer has governing authority over the software that is the named defendant. It is true – as Plaintiff argues in its May 8, 2023 pre-motion letter (ECF DOC. 38) – that Compound Labs, Inc. is "unrelated and disinterested" from Compound Protocol, and that "The Compound Protocol Belongs to the Community." While Labs has no control over the Compound Protocol, Labs has direct and substantive interests in the subject of this litigation that will be unprotected if intervention is not permitted. The Complaint literally alleges that Labs released software that violates a patent. Labs believes this is untrue, because the patent is invalid. Accordingly, intervention should be granted.

## STATEMENT OF FACTS

The relevant facts and procedural history set forth herein are further described in the accompanying Declaration of Jayson Hobby dated June 6, 2023 (the "Hobby Decl.") and the exhibits thereto. Attached to the Hobby Declaration as Exhibit A is a copy of the Complaint filed by Plaintiff in this Action (hereinafter, "Complaint" or "Compl.") and a copy of Intervenor Defendant's Proposed Answer with Counterclaims is attached to the Hobby Declaration as Exhibit B.

### I. BACKGROUND – BLOCKCHAIN

This litigation concerns the efforts of Plaintiff to enforce purported exclusive patent rights over blockchain technologies that had long been in the public domain. A blockchain is a digital database or ledger shared among all computers in a network, which comprises a list of records (i.e., blocks) securely linked together. In 2008, a white paper published by an individual or group under the pseudonym Satoshi Nakamoto explained the framework for a decentralized blockchain,

which was later implemented as a core component of the cryptocurrency bitcoin, which allows for the direct transfer of digital currency (bitcoin) without a central intermediary. Blockchain technology has numerous applications. Since 2008, a number of other blockchain products, the majority of which are open source and in the public domain, have launched, including the Ethereum blockchain in 2015.

Over the years, numerous technologies applicable to blockchains have been developed, and as they are largely open-source, they are publicly available and shared, and no one party claims ownership.

Some blockchains are entirely "self-contained," and do not refer to or rely on outside informational sources. However, many blockchains (or systems of computer programs known as "smart contracts") refer to, rely on, or draw data from external systems, thereby enabling smart contracts to execute based upon inputs and outputs from the real world. "Oracles" allow a blockchain or blockchain system to access existing data sources, legacy systems, and advanced computations. More complex systems make use of this structure as well. Indeed, the vast majority of smart contract use cases in decentralized finance ("DeFi") require knowledge of real-world data and events happening "off-chain" (i.e., from an external informational source). As a consequence, a decentralized network of linked computers that retrieve information from data sources outside that immediate network is an incredibly common technology.

## II.   DEVELOPMENT AND LAUNCH OF COMPOUND PROTOCOL

Proposed Intervenor Defendant Compound Labs, Inc. ("Labs") is a software development company, launched in August 2017 by co-founders Robert Leshner and Geoffrey Hayes. (Hobby Decl. ¶ 3). Beginning in 2018, Labs developed the Compound Protocol ("Protocol"), an algorithmic, autonomous interest rate protocol built on the Ethereum blockchain that allows its

users to exchange the time value of digital assets through lending and borrowing. (Hobby Decl. ¶ 3). Protocol was launched in September 2018, and was initially administered by Labs. (Hobby Decl. ¶ 4). In June 2020, however, Labs turned control over Protocol to holders of COMP tokens. (Hobby Decl. ¶ 4). COMP tokens confer on their holders the right to vote and implement changes to the Protocol through Protocol's community governance system. (Hobby Decl. ¶ 5). There are thousands, or more, COMP token holders throughout the world, largely unidentifiable and unknown to each other, who participate in the governance of Protocol by voting on self-executing proposals consisting of sets of executable code. (Hobby Decl. ¶¶ 5-6). The Protocol runs autonomously, and has since mid-2020. (Hobby Decl. ¶¶ 4-5).

### III.   THE '797 PATENT

As set forth in the Complaint, in early 2018, Plaintiff filed a provisional patent application that eventually became U.S. Patent No. 10,025,797 (the "'797 Patent") titled "Method and System for Separating Storage and Process of a Computerized Ledger for Improved Function." (Compl. ¶¶ 23-24). The '797 Patent is purportedly directed to "systems and methods that improve distributed-ledger technology by addressing computational, time, storage, and security constraints inherent to distributed ledgers (such as blockchains)." (Compl. ¶ 25). The technology described by the patent purports to provide a novel method to improve the efficiency, utility and security of computerized ledgers, but nothing described in the patent consists of new or non-obvious technologies or non-obvious improvements over prior art. At least part of what the patent suggests, for example, sounds just like the "oracles" that are prevalent in blockchain technologies, which are commonly used today, and were commonly used before the '797 Patent was granted.

Astonishingly, the application, made some ten (10) years after the publication of the Satoshi White Paper, did not cite any prior art, including the Satoshi White Paper itself. (Compl.,

Ex. 1 at (56)). It also employed unusual terminology not commonly used in the field. The Patent was granted on July 17, 2018, after an exceptionally brief examination period in which all claims were allowed without any rejections or substantive discussion by the Patent Examiner as to why the claims were distinguished over the prior art.

### IV.   PLAINTIFF ATTEMPTS TO SHOP ITS SHAM PATENT

On November 12, 2021, Plaintiff sent a letter addressed to "Compound Finance" c/o Labs' then CEO Robert Leshner offering to license or sell the '797 Patent to Compound Finance. (Hobby Decl. Ex. C). Labs responded to the, letter, explaining that Plaintiff was conflating Labs (the software development company), Compound Finance (an internet domain name owned by Labs), and Compound Protocol (the open source software) but, in any event, stating unequivocally that the '797 Patent is invalid and not being infringed by Labs, Protocol, or Compound Finance. (Hobby Decl. Ex. D). In response, Plaintiff rejected Labs' positions and reiterated its offer to license or sell the '797 Patent. (Hobby Decl. Ex. E).

Upon information and belief, many other prominent projects in the blockchain space – with various different types of technologies – also received a similar letter, offering to sell or license the patent, or to sue the recipient on it.

On October 5, 2022, Plaintiff purported to commence the instant action for patent infringement against defendant "Compound Protocol." Acknowledging that Compound Protocol is "a decentralized autonomous organization controlled and operating [on] the Ethereum blockchain" (Compl. ¶ 4), the Complaint alleges that Compound Protocol directly infringes the '797 Patent, (Compl. ¶¶ 84-95), and that because COMP token holders ultimately control the Protocol through its decentralized voting structure, they are liable to Plaintiff for Protocol's alleged infringement. (Compl. ¶¶ 10-13). Plaintiff further alleges that both Labs and Leshner "have been

holders of COMP tokens," (Compl. ¶ 10), but Labs and Leshner are not named as defendants in the Complaint.

Plaintiff's omission of Labs from the Complaint is deliberate. Throughout its Complaint, as in its pre-litigation correspondence with Labs, TRS repeatedly conflates Labs (the software development company), with Protocol (the software), and COMP token holders (who may participate in the governance of the software by using their COMP tokens to vote). (*See, e.g.*, Compl. ¶¶ 4-7, 9-13, 42-83). Yet in suing the Protocol only, Plaintiff attempts to avoid the involvement of any cognizable parties who might actually be able to defend the action.

At the same time that it commenced the instant action, Plaintiff filed a sister patent infringement lawsuit against MakerDAO, which also appears to be a non-entity, like Protocol. In that action, Plaintiff also asserts infringement of the '797 Patent by the Maker software protocol. That case, *True Return Systems LLC v. MakerDAO*, Case No. 1:22-cv-08478-VSB (S.D.N.Y.), is currently pending before the Honorable Vernon S. Broderick.

In bringing this litigation in this manner, Plaintiff seeks to monetize its sham patent through litigation with a defendant – a software protocol – that it knows will not and cannot (either legally or practically) defend against the action and deliberately avoid the participation of Labs. Labs, while not named as a defendant in the suit, has repeatedly advised Plaintiff that its actions in bringing the litigation against the Protocol are improper. On October 12, 2022, Plaintiff sent a letter addressed to "Compound Finance (d/b/a Compound Protocol, Compound Finance, compound.finance)" and "COMP Owners and Compound Finance Governance" seeking waiver of formal service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (Hobby Decl. Ex. F). By letter dated October 18, 2022, Labs wrote to Plaintiff and advised that Plaintiff's attempts were improper, and demanded that Plaintiff withdraw the Complaint. (Hobby Decl. Ex. G).

Plaintiff declined to withdraw its Complaint, (Hobby Decl. Ex. H), and nearly five months later, on March 22, 2023, Plaintiff served Compound Protocol by messaging the @compoundfinance Twitter account (an account owned by Labs), posting to the Compound Protocol forum at www.comp.xyz, and emailing security@compound.finance (an email account owned and maintained by Labs) and niraj@polychain.capital. (Hobby Decl. ¶¶ 12-13, Ex. I). Labs rejected such service once again. (Hobby Decl. Ex. J).

## ARGUMENT

### I. LABS IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Applicants seeking to intervene as of right must meet four separate requirements: (1) the application to intervene must be timely; (2) the applicant must claim an interest in the subject matter of the action; (3) denial of the motion to intervene may impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately protected by the existing parties in the litigation. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001); *Marcelo Burlon S.R.L. v. Ailei Fashion*, No. 19-CV-11336 (VSB), 2022 WL 3925159, at *2 (S.D.N.Y. Aug. 31, 2022). This test is "flexible" and "discretionary," and courts generally consider all four factors as a whole, rather than narrowly focusing on any one. *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002).

Since Labs amply satisfies all four requirements of Rule 24(a)(2), this Court should grant its request to intervene as a matter of right.

### A. Labs' Motion to Intervene Is Timely

This motion is timely. In determining whether a motion to intervene is timely, courts consider a number of factors, including: (1) the length of time the applicant knew or should have known of its interest before making its motion; (2) prejudice to the existing parties; (3) prejudice to the applicant if its motion is denied; and (4) the presence of unusual circumstances mitigating for or against a finding of timeliness. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006). The timeliness requirement of Rule 24(a)(2) is flexible and entrusted to the district judge's sound discretion. *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986).

Labs' motion comes before any substantive proceedings or discovery have taken place. The activity in the case to date has been limited to the filing of the Complaint, TRS's motion to serve Protocol by electronic means, and TRS's motion for default judgment. Plaintiff filed the Complaint on October 5, 2022. (ECF DOC. 1). On March 6, 2023, the Court approved alternate service of process, which Plaintiff only completed on March 22, 2023, and on May 4, 2023, Plaintiff filed a motion for default judgment, which the Court adjourned *sine die* on May 9, 2023. (ECF DOC. 13-21; 23-24, 39). Since Labs' prompt motion could not in any way be construed to impact any strategic, procedural or substantive decisions that Plaintiff has taken or may take in connection with this action, Labs' motion is timely. *See Arista Recs., Inc. v. Dalaba Color Copy Ctr., Inc.*, No. 05-CV-3634 (DLI)(MDG), 2007 WL 749737, at *3 (E.D.N.Y. Mar. 7, 2007) (motion to intervene timely where motion filed five months after complaint was filed and before commencement of discovery); *Mortgage Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381,

8

384 (E.D.N.Y. 2003) (motion to intervene timely where motion filed six months after movant knew or should have known of its interests, discovery was in the initial stage, and there was no basis to conclude other parties to the action would be prejudiced by movant's intervention); *Building. & Realty Inst. of Westchester and Putnam Cntys., Inc. v. State of N.Y.*, No. 19-CV-11285 (KMK), 2020 WL 5667181, at *5 (S.D.N.Y. Sept. 23, 2020) (motion to intervene timely where motion filed at an early stage in the litigation and prior to any substantive motions).

### B. Labs Claims an Interest in the Subject Matter of the Action

Labs is entitled to intervene because it has a "direct, substantial, and legally protectable" interest in the subject matter of the action. *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). *See also Donaldson v. U.S.*, 400 U.S. 517, 531 (1971). Labs' interest is two-fold.  First, the Complaint repeatedly alleges that Labs took a direct part in directly and indirectly causing the infringement of the '797 Patent by the Protocol.  Plaintiff alleges that Labs created, launched and controlled the Protocol by "deploy[ing] the Protocol to the Ethereum mainnet," (Compl. ¶ 9), that "Compound was launched for the principal purpose of creating a cryptocurrency lending business marketplace governed by … **Compound Labs Inc. (as Compound's initial administrator and software provider)**," (Compl. ¶ 10), that "the system components and integrations of Compound were **provided by and performed by Compound Labs Inc.**," (Compl. ¶ 34), that "Compound has been periodically controlled by an administrator account which was **originally operated by Compound Labs Inc.**," (Compl. ¶ 35), and that "**Compound Labs Inc. develop[s] and promote[s]** the Compound blockchain environment" (Compl. ¶ 40) (emphasis added).

In addition, Plaintiff clearly alleges throughout the Complaint that even though Labs has relinquished control over the Protocol, Labs still bears liability for the Protocol patent infringement

9

by virtue of its ownership of COMP tokens.  Plaintiff alleges that "**Compound Labs, Inc.** and Robert Leshner have been holders of COMP tokens," (Compl. ¶ 10), and as such "**share responsibility** for [Protocol's] liabilities." (Compl. ¶ 13) (emphasis added). Plaintiff also takes the clear position that Protocol is properly treated as a general partnership (Compl. ¶¶ 10-13; ECF DOC. 18 at 1-6; Hobby Decl. Exs. C, E), and that, as a result, all COMP token holders would be jointly and severally liable for any liability against the Protocol.  The totality of Plaintiff's allegations establish that if there were to be an adverse judgment against the Protocol, Plaintiff would attempt to hold that judgment against Labs, along with other COMP token holders. Accordingly, on the face of this Complaint, Labs has a direct, substantial, and legally protectable interest placed at issue by the claims of infringement of the '797 Patent against the Protocol.

C. **Denial of Labs' Motion Will Impair Labs' Ability to Protect Its Interests**

Intervention is also proper because Labs' interests may be impeded or impaired by the disposition of the action. *Mastercard*, 471 F.3d at 389.  As discussed above, the litigation alleges that Labs is a direct and indirect infringer of the '797 Patent and that it is jointly and severally liable as an alleged COMP token holder.  If a default or adverse judgment were entered against Protocol – something that seems likely given that Protocol is a non-entity with no capacity to appear and defend itself in this action – Labs risks being held liable for damages and potentially being subjected to injunctive relief, notwithstanding that it does not control the Protocol and has no legal ability to control its activities or governance.  Absent its own direct participation in the defense of the claims in this litigation, no other party would be in a position to defend Labs' position and/or assert Labs' rights on its behalf as the initial developer of Protocol. *Honeywell, Int'l Inc. v. Audiovox Communications Corp.*, Nos. Civ.A. 04–1337–KAJ, Civ.A. 04–1338–KAJ, Civ.A. 04–1536–KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) ("as a manufacturer of

the product component which is at the heart of these cases, [intervenor] has a compelling interest" and "can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known").

### D. Labs' Interest Is Not Adequately Represented by Existing Parties

Finally, Labs' interests cannot be adequately represented by the parties to this lawsuit. The Second Circuit has held that a proposed intervenor bears a "minimal" burden of establishing that its interests are not adequately represented by the parties to the lawsuit. *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972). Here, Courts consider whether a current party's interests are so similar to that of the proposed intervenor that adequacy of representation is assured. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d at 132-33.

Protocol is in no position whatsoever to defend against the allegations in the Complaint and therefore it cannot possibly adequately represent Labs' interests in the present case. Plaintiff was repeatedly advised by Labs that Protocol, against whom the Complaint was filed, is no more than software – it is the colloquial name for a group of computer programs on the internet. (Hobby Decl. Exs. D, G, J). Protocol is not an entity or party, and it has no ability (legal or practical) to appear in this action let alone mount a defense against the spurious claims of patent infringement.

Software has no legal existence, nor does it have the capacity to sue or be sued. *See* Fed. R. Civ. P. 17(b); *Roby v. Corporation of Lloyd's*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992) ("Both capacity to be sued and legal existence are prerequisites to the suability of an entity . . . ."). Protocol cannot appear and assert a non-infringement defense, nor can it challenge the validity of the '797 Patent.

Despite knowing that Protocol was no more than software, Plaintiff intentionally proceeded in this action solely against Protocol, which it knew to be a non-entity, and purposefully did not name Labs as a defendant in its suit, notwithstanding that it repeatedly refers to Labs and directly alleges that it is liable for the conduct alleged in the Complaint. Accordingly, application of this factor, as well as the other relevant factors, all support intervention as of right.

## II. ALTERNATIVELY, LABS SHOULD BE PERMITTED TO INTERVENE IN THE COURT'S DISCRETION

In the alternative, even if Labs could not establish its right to intervene as of right, this Court should grant Labs permission to intervene as a matter of discretion pursuant to Rule 24(b). Permissive intervention "is to be liberally construed." *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (citing *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)). Here, the primary consideration is whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties. *U.S. Postal Serv. v. Brennan*, 579 F.2d at 191; *Bionpharma Inc. v. CoreRx, Inc.*, No. 21-CV-10656 (JGK), 2022 WL 580767, at *5 (S.D.N.Y. Feb. 24, 2022). The Court will also consider additional factors such as the nature and extent of the intervenor's interests, whether the intervenor's interests are adequately represented by the other parties, and whether the intervenor will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues present. *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018)).

Permissive intervention is appropriate in this case. Labs' claims and defenses against TRS are grounded upon the same legal and factual questions as the main action, i.e., whether Protocol infringes the '797 Patent and whether the Court should declare the '797 Patent invalid. And, as set forth above, Labs' motion is timely and its intervention will not prejudice the rights of existing parties. Finally, Labs' intervention will significantly contribute to the development of the

underlying factual issues in this case and to the just and equitable adjudication of the issues present. As the initial developer of Protocol, Labs is uniquely positioned to speak to Protocol's development and functionality, as well as the underlying blockchain technology. *See Honeywell*, 2005 WL 2465898, at *4 (manufacturer is "uniquely situated to understand and defend its own product"). If Labs' motion to intervene is not granted, Labs will be forced to file a competing action for declaratory judgment that the '797 Patent is not infringed and invalid, leading to additional litigation and potentially inconsistent outcomes. Thus, granting Labs' motion serves the purpose of intervention – efficiently administering legal disputes by resolving related issues in once lawsuit. *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994).

## CONCLUSION

For the foregoing reasons, Labs respectfully requests that this Court grant its motion to intervene in this litigation either as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, in the alternative, by permission pursuant to Fed. R. Civ. P. 24(b)(1), and grant such other and further relief as may be deemed appropriate in the interests of justice.

Dated: New York, New York
       June 6, 2023

                              MORRISON COHEN LLP

                              By:  */s/ Alvin C. Lin*
                                   Alvin C. Lin
                                   Jason P. Gottlieb
                                   Daniel C. Isaacs
                                   909 Third Avenue
                                   New York, New York 10022
                                   (212) 735-8600

                                 *Attorneys for Proposed Intervenor Defendant Compound Labs, Inc.*