## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TRUE RETURN SYSTEMS LLC,

                Plaintiff,

     v.

COMPOUND PROTOCOL,

                Defendant.

Case No. 22-cv-08483-JGLC

## MEMORANDUM OF LAW IN OPPOSITION TO
## COMPOUND LABS, INC.'S MOTION TO INTERVENE

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 1

   A.   Plaintiff's U.S. Patent No. 10,025,797 ................................................................. 2

   B.   Defendant is a Decentralized Autonomous Organization and Not Mere Software ........... 3

   C.   Compound Labs Has Disavowed its Interests in Compound Protocol .............................. 4

III.  ARGUMENT ............................................................................................................... 5

   A.   Compound Labs Is Not Entitled to Intervene as of Right Under Rule 24(a) ..................... 5

      1.   Compound Labs' Motion to Intervene is Untimely and Should Be Denied .................. 6

      2.   Compound Labs Has Repeatedly Disavowed Any Interest In Compound Protocol And Thus This Action .................................................................................................... 8

      3.   Applicant's Non-Interest Is Adequately Represented by Defendant ........................... 10

   B.   Compound Labs' Motion Fails to Meet The Standards For Permissive Intervention Under Fed. R. Civ. P. 24(b). ...................................................................................................... 11

   C.   Compound Labs Conduct Disqualifies It from Intervention ............................................. 11

IV.   CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 353 (S.D.N.Y. 2009)........ 7

*Beam v. HSBC Band USA*, 2004 WL 944522 (W.D.N.Y. 2004).................................................... 7

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) .................................... 7

*Catanzano by Caranzano v. Wing*, 103 F.3d 223 (2d Cir. 1996) .................................................. 7

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .............................................................. 6

*Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets*, 847 F.2d 1038 (2d

    Cir. 1988) ................................................................................................................................ 6

*Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 658 F. Supp. 1205 (S.D.N.Y. 1987) ..... 8

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) ............................................... 7

*Kamdem-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130 (S.D.N.Y. 2016) ................................... 7, 8, 11

*Kent vs. Pooltogether, Inc.*, et al, No. 21-cv-06025 (E.D.N.Y filed Oct. 29, 2021) .................. 5, 9

*Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377 (2d Cir. 2006) ........................... 6, 7

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994).................................................... 6

*United States v. State of N.Y.*, 820 F.2d 554 (2d Cir. 1987) ......................................................... 7

*Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d

    92 (2nd Cir. 1990)................................................................................................................. 10

## I.       INTRODUCTION

Compound Labs' Motion to Intervene fails for multiple reasons. As a preliminary matter, the motion is egregiously untimely in that Compounds Labs has had notice of this particular action for over nine months and has been communicating with Plaintiff concerning the subject matter of this action since November 2021 (Dkt. No. 41, Exh. D)—roughly 539 days before it first raised the issue of intervention with this Court. (*See* Dkt. No. 37).

Compound Labs has further unambiguously stated that it is distinct and unrelated from the named Defendant—including not profiting from the Defendant *at all*. These repeated public statements cannot be reconciled with Compound Labs' present request to intervene because it purports to have an interest in this action.

Compound Labs is manufacturing an interest which, by its own acts and admissions, it does not have. Its participation in this action would not serve to protect any cognizable right, would impair Plaintiff's ability to timely resolve this litigation, and would reward the gamesmanship undertaken by Defendant, who has thus far ignored the jurisdiction of this Court.

For all these reasons, Compound Labs' Motion to Intervene should be denied.

## II.      FACTUAL BACKGROUND

While the technology may be complex, the facts and posture of this case are straightforward. This case concerns Defendant's willful infringement of Plaintiff's technology for which it was granted U.S. Patent No. 10,025,797 (the "'797 Patent"). The entity—not software, but an entity—that infringes the '797 Patent is a decentralized autonomous organization ("DAO"), a form of a blockchain-governed organization that is collectively owned and working toward a shared mission. (Dkt. No. 16, Exh. E). A DAO lacks a central authority and is typically governed by members who hold tokens in the DAO. Defendant, like all DAOs, uses a consensus and blockchain format to provide structure to the organization and implement its rules, enable

decentralization, and obviate the need for a central authority. (Compl. ¶¶ 12, 35-37).

While a DAO may promote governance, management, and oversight of an entity like a corporation or LLC, at least one court has found that the DAO structure does not shield members from liability the way that a limited liability company or corporation might. (*See* Dkt. No. 38, n. 1).

### A.      Plaintiff's U.S. Patent No. 10,025,797

The '797 Patent, titled, "Method and System for Separating Storage and Process of a Computerized Ledger for Improved Function," is generally directed to systems and methods that improve distributed-ledger technology by addressing computational, time, storage, and security constraints inherent to ledgers (such as blockchains). (Compl., ¶¶ 22-23.) The general approach of the '797 Patent is to separate certain processing and storage functions from a base distributed computerized ledger (such as a blockchain) but link such separated processing and storage to the base distributed computerized ledger. *Id.*

The technology underlying the '797 Patent was developed by Jack Fonss, Plaintiff's sole owner. The '797 Patent invention is generally directed at the architecture, components, instructions, and operations of computer systems operating environments with mixed format or hybrid storage devices including the types of distributed computer ledgers (DCL) used in recently developed cryptocurrency protocols. The invention includes the system of devices, components, and instructions to move certain functionality and storage off a DCL while simultaneously allowing a DCL to utilize exogenous data to update transaction records. Among other benefits, the components and devices of a differentials processing/storage system links a DCL to exogenous data while keeping and implementing certain computing-intense processes and storage-intense data so that a DCL is not burdened with such, altering the operation of computer system

components including increased transaction throughput and reduced storage overhead.

### B.     Defendant is a Decentralized Autonomous Organization and Not Mere Software

Defendant Compound Protocol is a cryptocurrency lending business and marketplace governed by the owners of tokens (i.e., interests) called "COMP." (Compl. ¶ 10.) While the proposed intervenor suggests that Defendant is mere software, as of the quarter ended March 31, 2022, Compound Protocol maintained approximately 10,000,000 COMP ownership and governance tokens outstanding with an approximate market value of $986 million (Dkt. No. No. 1, Compl. ¶ 39). Since June 2020, Compound Protocol's asset balances (i.e., the asset amounts Compound Protocol's customers have deposited with Compound Protocol) have generally exceeded $500 million, and as of the first quarter of 2022, Compound Protocol balances regularly exceeded $10 billion (Compl. ¶ 41).

On information and belief, Compound Labs, Inc. is a software company specializing in the development of cryptocurrency financial systems and software. Compound Labs deployed the initial version of the software used by the Compound Protocol in September 2018 to the Ethereum blockchain main net (Compl. ¶ 9).

By June 2020, Compound Labs, Inc. relinquished ownership and control of Compound Protocol to the owners of Compound Protocol's COMP token: "We then turned control over to the community by distributing COMP tokens to a collection of the protocol's most important stakeholders. . . . *[W]e don't profit directly from the protocol at all*." (Dkt. No. 16, Exh. E) (emphasis added).

Compound Protocol is governed by the owners of the COMP token. (Dkt. No. 1, Compl. ¶ 10.) Owners of COMP tokens have governance rights that allow holders to propose and approve actions that Defendant will take, where actions include many of those typically done by corporate

officers, boards, or employees, such as spending treasury funds to hire personnel, changing organizational goals and policies, and even distributing treasury assets to COMP token holders. (Compl. ¶ 13.)

Because the Compound Protocol operates an unregulated cryptocurrency banking and exchange business, and because its ownership interest COMP tokens are increasingly characterized as unregistered securities, it is not entirely surprising for Compound Labs to claim "no interest" and "no connection" to the Defendant in certain courts, while then claiming it has an interest in the Defendant's property and transactions in this Court, where securities, commodities and banking regulations are not directly implicated. The change of heart would appear to be based on the legal risks and liabilities presented by each case rather than genuinely supportable interests.

Compound Protocol regularly promotes and boasts of its business scale, operational success, profitability, profit distributions, treasury operation strategies, and compensation schemes. (*See, e.g.*, Dkt. No. 11 at 2, n. 3-4)).

### C.    Compound Labs Has Disavowed its Interests in Compound Protocol

In 2020, Compound Labs unambiguously declared that it no operational, management, or profit interest in Compound Protocol, confirming a turnover of Compound Protocol to owners of the COMP token. (*See* Dkt. No. 16, Exh. E). In a press release titled, "The Compound Protocol Belongs to the Community," Details of the divestiture were set forth in the same press release:

- "[T]he protocol's users are also its owners and managers . . . . Our core work on the Compound protocol is done." (*Id.*)

- "Now that the user distribution system is live, it's time for us to step back and for the community to take charge." (*Id.*)

- "[O]ur employees may decide to participate in governance as individual members of the community themselves (or not). Beyond that, we leave the protocol to you." (*Id.*)

- "Compound Labs [will not] serve a continuing managerial role in community governance." (*Id.*)

- "Compound Labs [will not] participate directly in governance, such as by voting or delegating COMP" (*Id.*)

- "Compound Labs [will not] privately coordinate votes for or against governance proposals" (*Id.*)

- "We [Compound Labs, Inc.] ***don't profit directly from the protocol at all***." (*Id.*) (emphasis added).

Similarly, Compound Labs has in court filings disavowed its interest in Compound Protocol. In one example, Compound Labs is one of several defendants named in an action related to a cryptocurrency-based lottery. *See Kent vs. Pooltogether, Inc.*, et al, No. 21-cv-06025 (E.D.N.Y filed Oct. 29, 2021). In support of a June 2022 Motion to Dismiss, Compound Labs submitted a memorandum (*Id.* at Dkt. No. 95) distancing itself from Compound Protocol:

- "Plaintiff thinks that the Compound Protocol software was used in some way that violates a New York law. But that complaint has nothing whatsoever to do with Compound Labs, who is not alleged to have done anything other than create the Compound Protocol software." (*Id.* at 1.)

- "Compound Protocol is not owned operated or administered by Compound Labs." (*Id.* at 2.)

- "The Compound Protocol is just software on the internet. Anyone can use it." (*Id.*)

- "Compound Labs (which is a company) is not the same thing as Compound Protocol, which is no more than software on the internet that is freely available for anyone to use." (*Id.* at 6.)

- "Plaintiff cannot hold Compound Labs liable under GOL Sec. 5-423 for anyone else's actions on the decentralized autonomous software that is the Compound Protocol." (*Id.* at 7.)

Compound Labs should be held to its prior statements that it has no interest in Defendant.

## III.   ARGUMENT

### A.    Compound Labs Is Not Entitled to Intervene as of Right Under Rule 24(a)

Compound Labs fails to meet the criteria required for intervention of right Rule 24(a). Under Rule 24(a), a party is entitled to intervene *as of right* only where "all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006) *citing United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Compound Labs does not meet these criteria.

### 1. Compound Labs' Motion to Intervene is Untimely and Should Be Denied

Compound Labs' inexcusable delay in seeking intervention in this action alone compels the denial of its motion. The determination of the timeliness of a motion to intervene is within the discretion of the district court, "evaluated against the totality of the circumstances before the court." *Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets*, 847 F.2d 1038, 1043-44 (2d Cir. 1988) (citations omitted). Circumstances to be considered in assessing whether a motion to intervene is timely include: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay in bringing the motion; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

The present action was filed on October 5, 2022, more than nine months ago. (Dkt. No. 1.) Prior to the filing of the Complaint, Plaintiff had been in reciprocal communication with Compound Labs and its counsel concerning this very dispute dating back to November 2021. (Dkt.

No. 41, Exh. D), a year and a half before it first raised the issue of intervention with this Court. (*See* Dkt. No. 37).

Throughout this delay, Compound Labs observed as Plaintiff commenced this litigation (Dkt. No. 1), made efforts to serve the Defendant by alternative means (Dkt. No. 14), and ultimately sought and received a default (Dkt. No. 29) from the Clerk of this Court. Only then did the proposed intervenor appear before this Court, without a legitimate reason for this delay, and without any cognizable interest to protect.

Courts in this District routinely deny intervention for tarrying conduct like that of Compound Labs. *See, e.g., Kamdem-Ouaffo v. PepsiCo, Inc.,* 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (denying intervention for the sole reason that the proposed intervenor acted only after approximately 18 months of constructive notice and 16 months of actual); *Mastercard Int'l, Inc.,* 471 F.3d. at 377 (finding a delay of less than one year untimely for intervention purposes). Courts in this Circuit similarly deny intervention when a party has delayed for many months. *See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 353 (S.D.N.Y. 2009); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (holding 12-month delay to be untimely for purposes of intervention); *Catanzano by Caranzano v. Wing,* 103 F.3d 223, 233 (2d Cir. 1996) (denying intervention where the motion was filed at least 18 months after the applicants should have known of their interest in the litigation); *United States v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987) (denying motion to intervene where 15 months elapsed after the applicant knew or should have known of the unrepresented interest). Even delays of less than one year can render such motions untimely. *See also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (holding that an eight-month delay rendered a motion to intervene untimely). *See also Beam v. HSBC Band USA*, 2004 WL 944522, 1 (W.D.N.Y. 2004) (denying

motion to intervene where the applicants had 10 months of actual notice and 15 months of constructive notice). Compound Labs' delay is well within the guidelines for denying intervention.

The plain fact that Compound Labs waited by for one and a half years from notice of Plaintiff's claims compels that its request to intervene should be denied as untimely. This delay alone is sufficient grounds for delay of the motion. *Kamdem*, 314 F.R.D. at 134 (S.D.N.Y. 2016) (noting that failure to satisfy any one of the Rule's requirements is a sufficient ground to deny the motion).

### 2. Compound Labs Has Repeatedly Disavowed Any Interest In Compound Protocol And Thus This Action

To intervene as of right, a proposed intervenor must have a protectable interest in the litigation. Courts in this District have described that the term "interest" in the context of Rule 24(a), means an interest that is "significantly protectable." *See, e.g., Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 658 F. Supp. 1205, 1208 (S.D.N.Y. 1987). The right must be direct, not remote or contingent, and it also must be based on a right that belongs to the proposed intervenor rather than to an existing party to the suit. *Id*. Compound Labs can claim none of these.

The court need not probe far to uncover Compound Labs' non-interest in this dispute. Compound Lab has made repeated public statements disavowing any interest it once claimed in Defendant and making an interest in this action impossible.

Compound Labs has consistently claimed that the subject property and technology is owned by the Compound Protocol and free for use by anyone on the internet. Compound Labs thus has no protectable interest and no direct interest of any kind. It is impossible to reconcile Compound Labs' statements and actions with any claim or interest or stake. A statement such as "[w]e [Compound Labs, Inc.] don't profit directly from the protocol at all" (Dkt. No. 16, Exh. E) is unambiguous.

Compound Labs' purported interest in Defendant is no more than any investor's interest in a publicly traded company that sees a dip in stock price when it is involved in an IP dispute (even though Compound Labs has delivered public notice that it maintains no profit interest in the Defendant and therefore presumably no tokens). Compounds Labs' claims that it has "direct and substantive interests in the subject of this litigation" (Dkt. No 42 at 2) are plainly inconsistent with the proposed intervenor's public statements.

Its disavowal of an interest in Defendant has proceeded in parallel in litigation. Compound Labs has in court filings disavowed its interest in Compound Protocol. In one example, Compound Labs is one of several defendants named in an action related to a cryptocurrency-based lottery. *See Kent, supra*. In support of a June 2022 Motion to Dismiss, Compound Labs submitted a memorandum (*Id*. at Dkt. No. 95) distancing itself from Compound Protocol:

> Plaintiff thinks that the Compound Protocol software was used in some way that violates a New York law. But that complaint has nothing whatsoever to do with Compound Labs, who is not alleged to have done anything other than create the Compound Protocol software.

(*Id*. at 1.)

With respect to claiming an interest in the property of transaction of this action, Compound Labs' 2020 complete transfer of property, ownership, and rights, and its own representations, make it no different than anyone using or accessing services on the internet. Compound Labs does not and cannot claim any interest, right, or ownership (protectable or not) belonging to Compound Labs.

Because Compound Labs has represented that it wholly transferred its interest in anything that is Compound Protocol and that it has no interest in Compound Protocol intellectual property, Compound Labs cannot now manufacture an interest that does not exist. To have an interest in the "property or transaction which is the subject of the action," the intervenor must have an interest in

"the pleadings in a case as [it] find[s] them." *Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92 (2nd Cir. 1990) (internal citations omitted). An intervenor cannot use Rule 24 to "creat[e]" a "whole new suit" or to "inject collateral issues into an existing action."

For these same reasons, Compounds Labs cannot argue that it meets the third prong of Rule 24(a)—that is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest. Compound Labs has no protectable interest in this action.

### 3.   Applicant's Non-Interest Is Adequately Represented by Defendant

As discussed above, the proposed intervenor has confirmed that it has no interest in Defendant that would require representation by any other party. Even if it did, Defendant is more than capable of defending this action—it simply has chosen to not do so as a strategic matter.

Defendant (not Compound Labs, but Defendant) has shown itself to be capable of engaging counsel when it sees a strategic advantage. For example, Defendant's governance team hired legal counsel to review and update its "Compound Grant Program 2.0," including regulatory compliance. (*See* Dkt. No. 38 at 3.) Defendant has apparently chosen to ignore the jurisdiction of this Court as a tactical matter. Permitting intervention by a stranger to this action would be an endorsement of this type of litigation gamesmanship.[1]

Further, the owners of the Defendant appear to be motivated and capable operators, and they have proposed and voted on many COMP proposals including ways to maximize profits (Dkt No. 18 at 5), the exploitation of business opportunities (*Id.* at 4), and the manner to distribute assets

---

[1] Were Compound Labs to actually have an interest in Defendant (even though it has publicly stated to the contrary), intervention would amount to litigation by proxy, enabling Defendant to evade this Court's jurisdiction and litigate from the sidelines.

from the Defendant's treasury assets (*Id*.). Refusing to appear in this litigation is by choice.

The purported interests that Compound Labs is seeking to protect are not unique to it and could be asserted by any third party without participation in this action.

**B.    Compound Labs' Motion Fails to Meet The Standards For Permissive Intervention Under Fed. R. Civ. P. 24(b).**

The threshold for *permissive* intervention under Rule 24(b)(1) is a "timely motion." Fed. R. Civ. P. 24(b)(1). As discussed above, Compound Labs' motion is untimely, having been made many months after the commencement of this action, and nearly a year and a half since Compound Labs had actual notice of its purported interest in this case. This alone is ground for denying Compound Labs' request to intervene. *See Kamdem-Ouaffo,* 314 F.R.D. at 134.

Further, a grant of Compound Labs' Motion would be prejudicial to the rights of the original parties to this litigation. Therefore, under Rule 24(b)(3), the Motion should be denied. See Fed. R. Civ. P. 24(b)(3). Defendant may yet appear in this action or enter discussions with Plaintiff on a settlement. Compound Labs' participation in the matter will only serve to delay and impair Plaintiff's resolution of the matter, and without any benefit to the proposed intervenor beyond disrupting the litigation.

**C.    Compound Labs Conduct Disqualifies It from Intervention**

Compound Labs' deliberate obstruction in blocking documents and notices in this matter, including deleting notices on the Compound Protocol Community Forum should preclude its participation as an intervenor under Rule 24(b), for: (i) engineering the [in]adequacy of defense it now claims requires its intervention, (ii) its acting to delay and frustrate these proceedings for its own purposes, and (iii) its engaging as a not-so-hidden existing party throughout this matter.

As early as March 10, 2022, Plaintiff delivered a notice letter, draft complaint, and supporting detail including the related patent and claims charts via Twitter. (Dkt. No. 16, Exh. M).

Also on March 10, 2022, in tandem with the Twitter posting, Plaintiff delivered a detailed notice of its claim with supporting detail, including the related patent and claim charts to the Compound Community Forum to affect a commercial agreement over the patent matter. (Dkt. No. 16, Exh. N). Shortly after the submission was published on the Compound Community Forum, the post was "unlisted" by a forum administrator identified as Robert Leshner, presumably the same Robert Leshner who founded Compound Labs. (*Id*.)

Immediately after commencing this action on October 12, 2022, counsel for Plaintiff provided copies of the now-filed Complaint, Summons, supporting materials, and a letter requesting a waiver of service to Compound Protocol via the Compound Protocol Forum. (Dkt. 16, ¶ 18). The administrator account for the Compound Forum responded with a return message (Dkt. No. 16, Exh. O) that confirmed that the submission was received. The post, however, was never released. (*Id*.)

In exercising its discretion under Rule 24(b), the Court may consider whether intervention will delay or prejudice the adjudication of the original parties' rights. Compound Labs has exhibited a pattern of behavior that has already delayed and prejudiced Plaintiff's rights and for that additional reason, Plaintiff requests that intervention under Rule 24(b) likewise be denied.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff respectfully submits that the Court should deny Compound Labs' motion to intervene.

Dated: July 5, 2023

**BOAG | LAW, PLLC**

By: _____

David A. Boag
447 Broadway, Suite 2-270
New York, NY 10013
dab@boagip.com

Attorneys for Plaintiff True Return Systems, LLC