**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRUE RETURN SYSTEMS LLC,

    Plaintiff,

    -vs-

COMPOUND PROTOCOL,

    Defendant,

    and-

 COMPOUND LABS, INC.,

    Intervenor Defendant.

Case No. 1:22-cv-08483-JGLC

**MEMORANDUM OF LAW IN SUPPORT OF**
**COMPOUND LABS, INC.'S MOTION TO STAY PROCEEDINGS**
**PENDING *INTER PARTES* REVIEW**

**Morrison**Cohen LLP

909 Third Avenue, New York, NY 10022–4731 · p:212.735.8600 · f:212.735.8708

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF FACTS & PROCEDURAL HISTORY ........................................................ 3

I.     BACKGROUND – BLOCKCHAIN TECHNOLOGIES ................................................... 3

II.    THE '797 PATENT ........................................................................................................... 4

III.   PLAINTIFF'S LAWSUIT AGAINST COMPOUND PROTOCOL ................................. 6

IV.    THE INTER PARTES REVIEW PROCEEDING (IPR) .................................................... 7

ARGUMENT ............................................................................................................................. 10

I.     THE COURT SHOULD EXERCISE ITS DISCRETION AND STAY
       THIS PROCEEDING PENDING THE IPR .................................................................... 10

       A.     A Stay Will Simplify The Issues And Trial In This Action ................................. 11

       B.     This Proceeding Is In Its Early Stages ................................................................. 15

       C.     A Stay Will Not Prejudice Plaintiff ..................................................................... 15

CONCLUSION .......................................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)............................................................................12

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*,
No. 13-cv-05669 (NSR), 2014 WL 2854656 (S.D.N.Y. June 20, 2014)..........................10, 15

*Corel Software, LLC v. Microsoft Corp.*,
No. 2:15-CV-528-JNP-PMW, 2016 WL 4444747 (D. Utah Aug. 23, 2016).........................12

*e-Watch, Inc. v. ACTi Corp.*,
No. SA-12-CA-695-FB, 2013 WL 6334372 (W.D. Tex. Aug. 9, 2013), *report
and recommendation adopted by* No. SA-12-CA-695-FB, 2013 WL 6334304
(W.D. Tex. Aug. 26, 2013) ......................................................................................14

*Evolutionary Intel., LLC v. Sprint Nextel Corp.*,
Nos. C-13-04513, C-13-04201, C-13-04202, C-13-04203, C-13-04204, C-13-
04205, C-13-04206, C-13-04207 & C-13-03587, 2014 WL 4802426 (N.D.
Cal. Sept. 26, 2014)..................................................................................................11

*Evolutionary Intel. LLC v. Yelp Inc.*,
No. C-13-03587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013)...............................15

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
No. 4:14-CV-2972, 2015 WL 1034275 (S.D. Tex. Mar. 10, 2015) .................................12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-1431, 2007 WL 1655625 (N.D. Cal. June 7, 2007) ..................................10

*Goodman v. Samsung Elecs. Am., Inc.*,
No. 17-cv-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017)..........................10, 15

*Grecia v. MasterCard, Inc.*,
Nos. 15-cv-9059 (RJS), 15-cv-9210 (RJS) & 16-cv-9691 (RJS), 2017 WL
11566955 (S.D.N.Y. Apr. 3, 2017).......................................................................11

*Intellectual Ventures II LLC v. Huntington Bancshares Inc.*,
No. 2:13-CV-00785, 2014 WL 2589420 (S.D. Ohio June 10, 2014)...............................13

*Intellectual Ventures II LLC v. SunTrust Banks, Inc.*,
No. 1:13-CV-02454-WSD, 2014 WL 5019911 (N.D. Ga. Oct. 7, 2014).............................14

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
    Nos. 14-803-RGA & 14-804-RGA, 2015 WL 9854845 (D. Del. Aug. 11,
    2015) .................................................................................................................13

*Molo Design, Ltd. v. Chanel, Inc.*,
    No. 21-CV-01578 (VEC), 2022 WL 2135628 (S.D.N.Y. May 2, 2022)..........................14, 15

*Murata Mach. USA v. Daifuku Co.*,
    830 F.3d 1357 (Fed. Cir. 2016).........................................................................10

*Nanobebe US Inc. v. Mayborn (UK) Ltd.*,
    No. 21-cv-08444 (JLR), 2023 WL 4993642 (S.D.N.Y. Aug. 4, 2023) ............................13, 16

*Nike, Inc. v. Lululemon USA Inc.*,
    No. 22-cv-00082 (RA) (OTW), 2023 WL 2214884 (S.D.N.Y. Feb. 24, 2023) ..........10, 11, 14

*PersonalWeb Techs., LLC v. Apple Inc.*,
    69 F. Supp. 3d 1022 (N.D. Cal. 2014) ...............................................................16

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
    Nos. 5:13-CV-01356-EJD, 5:13-CV-01358-EJD & 5:13-CV-01359-EJD,
    2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ..................................................3, 8, 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................12

*Rovi Guides, Inc. v. Comcast Corp.*,
    No. 16-CV-9278 (JPO), 2017 WL 4876305 (S.D.N.Y. Oct. 27, 2017).....................10, 15, 16

*Slingshot Printing LLC v. Canon U.S.A., Inc.*,
    Nos. 22-CV-00123 (HG) (LGD) & 22-CV-01852 (HG) (LGD), 2022 WL
    17361232 (E.D.N.Y. Dec. 1, 2022) ...................................................................14

*Synkloud Techs., LLC v. Cartessa Aesthetics, LLC*,
    No. 21-CV-4423 (GRB) (JMW), 2022 WL 1046261 (E.D.N.Y. Apr. 6,
    2022) .......................................................................................10, 14, 15, 16

## DOCKETED CASES

*True Return Systems, LLC v. MakerDAO*,
    Civil Case No. 1:22-cv-08478-VSB (S.D.N.Y.)........................................................6

## STATUTES & RULES

37 C.F.R. §42.1(d) .........................................................................................8

37 C.F.R. §42.71(d) ........................................................................................9

37 C.F.R. §42.100(c)......................................................................................2, 8, 9

37 C.F.R. §42.107 ...................................................................................................................8

35 U.S.C. §102 .................................................................................................................7, 8

35 U.S.C. §311 .................................................................................................................2, 8

35 U.S.C. §313 ...................................................................................................................8

35 U.S.C. §314(a) ..............................................................................................................8

35 U.S.C. §314(b) ..............................................................................................................8

35 U.S.C. §315(e) .........................................................................................................13, 14

35 U.S.C. §316 ..............................................................................................................2, 8, 9

35 U.S.C. §316(e) ...........................................................................................................2, 8

Fed. R. Civ. P. 24 ...............................................................................................................2

## OTHER AUTHORITIES

DeFi Education Fund, https://www.defieducationfund.org/ (last visited Oct. 19,
   2023). ...........................................................................................................................7

*Patents Pendency Data August 2023*, U.S. Patent & Trademark Office,
   https://www.uspto.gov/dashboard/patents/pendency.html (last visited Oct. 19,
   2023) .............................................................................................................................5

Intervenor Defendant Compound Labs, Inc. ("Labs") respectfully submits this memorandum of law in support of its motion to stay this proceeding pending the Petition for *Inter Partes* Review of the underlying patent that was recently filed by Non-Party DeFi Education Fund.

This lawsuit is the latest effort by Plaintiff True Return Systems LLC ("Plaintiff") to extract value from its worthless, sham patent.  Plaintiff filed for this patent in 2018, seizing upon long-standing blockchain technology that previously lay in the public domain for at least ten years. Plaintiff obtained the patent registration only months later, deceiving the U.S. Patent and Trademark Office (the "USPTO") by filing an application that failed to identify relevant prior art and disguised the obviousness of the "invention" through made-up terminology. After obtaining the registration for U.S. Patent No. 10,025,797 (the "'797 Patent"), Plaintiff attempted for years to monetize the rights, not by using the technology itself, but by attempting to sell or license it – pitching threats coupled with offers to sell – to multiple participants in the blockchain space. But Plaintiff could not disguise to those knowledgeable in the industry the fraudulent nature of the patent or how it was obtained.  Nobody bought it, and the patent languished.

Stymied in its efforts to exploit its sham patent rights, on October 5, 2022, Plaintiff commenced this suit against Defendant Compound Protocol (the "Protocol"), which is an open-source protocol (*i.e.* computer software) on the Ethereum blockchain.[1] The suit alleges that the Protocol infringes the '797 Patent. On the same date, Plaintiff also commenced a second, separate suit against MakerDAO, another protocol also built on the Ethereum blockchain.

In the instant suit, the named defendant, Protocol, is simply the name of open-source software on the internet.  Hence, there was no proper or juridical entity to appear in the case to

---

[1]    A copy of the Complaint filed by Plaintiff against the Protocol (the "Complaint" or "Compl.") is attached to the Declaration of Alvin C. Lin as Exhibit A.

defend it. On September 25, 2023, this Court granted a motion by Labs, which had originally created the Protocol, for permissive intervention pursuant to FRCP 24, so that it could defend against the suit.

Just weeks before Labs' intervention motion was granted, the DeFi Education Fund ("DEF" or the "Petitioner"), a nonpartisan research and advocacy group for decentralized finance, filed a petition for *Inter Partes* Review ("IPR") with the USPTO pursuant to 35 U.S. Code §311 (the "Petition"). In the Petition, which was filed on September 7, 2023, DEF requested that the Patent Trial and Appeal Board (the "PTAB" or the "Board") of the USPTO institute an IPR proceeding to review and invalidate all 20 claims of the '797 Patent.

An IPR is a limited and expedited trial proceeding for the specific purpose of deciding patentability challenges based on either anticipation or obviousness.  IPR proceeding challenges are more limited than adjudications of invalidity in federal court; they are based on more limited evidence, there is limited discovery, and proceedings are statutorily required to be completed within one year of institution of the IPR by the Board.  35 U.S.C. §316; 37 C.F.R. §42.100(c). The petitioner bears the burden of proving a proposition of unpatentability by a preponderance of the evidence. 35 U.S.C. §316(e).

On the instant motion, Labs requests a stay pending the PTAB's consideration of the IPR. A stay is a proper exercise of this Court's discretion because it will greatly simplify the issues for trial and allow this Court to take advantage of the PTAB's considerable expertise. In the event that the PTAB invalidates the patent, this entire action will become moot and further proceedings in this case will be unnecessary.

Even if the Petitioner is not successful in invalidating the patent, the proceedings and determinations before the Board, which will become part of the file for the '797 Patent, will still

help to narrow and simplify any future proceedings in this Court, including with respect to claim construction and the expert interpretation of cited prior art. Particularly because the instant case is still at the very beginning of the litigation and no discovery has been conducted, and as there is no prejudice to the Plaintiff, this Court should stay the litigation pending the outcome of the IPR. The entire purpose of the IPR procedure is "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs and to create a timely, cost-effective alternative to litigation." *PersonalWeb Techs., LLC v. Facebook, Inc.*, Nos. 5:13-CV-01356-EJD, 5:13-CV-01358-EJD & 5:13-CV-01359-EJD, 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) (citation and internal quotation marks omitted). Staying this litigation in favor of the IPR furthers these legislative purposes.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

The relevant facts and procedural history set forth herein are further described in the accompanying Declaration of Alvin C. Lin, dated October 20, 2023 (the "Lin Decl.") and the exhibits thereto.

### I.   BACKGROUND – BLOCKCHAIN TECHNOLOGIES

In 2008, a white paper published by an individual or group under the pseudonym Satoshi Nakamoto (the "Satoshi White Paper") explained the framework for a decentralized blockchain. (Lin. Decl. Exh. I).  A blockchain is a digital database or ledger shared among all computers in a network, which comprises a list of records (*i.e.*, blocks) securely linked together. The framework described in the Satoshi White Paper was later implemented as a core component of the cryptocurrency bitcoin, which allows for the direct transfer of digital currency (bitcoin) without a central intermediary.

Blockchain technology has numerous applications. Since 2008, a number of other products and technologies applicable to blockchains have been developed and launched, including the Ethereum blockchain in 2015.  Many of these technologies are open-source and publicly available and shared, and no one party claims ownership over them.

## II.     THE '797 PATENT

On February 23, 2018, Plaintiff filed a provisional patent application that eventually became the '797 Patent, entitled "Method and System for Separating Storage and Process of a Computerized Ledger for Improved Function." (Compl. ¶¶ 23-24).  The patent contains 20 claims, 3 of which are independent claims; in particular, Independent Claim 1 is a method claim, and Independent Claim 7 is a system claim.  (Lin Decl. Exh. B at 18:5-20:62).  The patent purports to describe a method and system for distributed computerized ledgers by "moving certain functionality and storage off the DCL [distributed computer ledger] while simultaneously allowing the DCL to utilize exogenous data to update transaction records on the DCL." (Compl. ¶ 29). Stated differently, the patent describes a layered or parallel system which is linked to access external data sources, thus speeding up the accessing, processing and storage of information.  *Id.*

The '797 Patent, however, fails to describe any new or non-obvious technologies or improvements over previously existing prior art, and so was not entitled to patent registration. Astonishingly, Plaintiff's application did not cite a single piece of prior art, including the Satoshi White Paper that had been published 10 years earlier. (Compl., Exh. 1 at (56)).  The application also employed unusual terminology not commonly used in the field.  The '797 Patent was granted less than five (5) months later, on July 17, 2018, after an unusually brief examination period[2] in

---

[2]     Five months to achieve registration is exceptionally short for a patent application.  According to the USPTO, between September 2021 and August 2023, the average time between filing of a patent application and obtaining a final disposition (registration or rejection) has ranged between 23.3 and 25.9 months.  *Patents Pendency Data August*

which all claims were allowed without any rejections or substantive discussion by the Patent Examiner as to why the claims were distinguished over the prior art. In view of the misleading nature of the application and the very hasty examination process, Plaintiff ultimately obtained patent rights over blockchain technologies that had long been in the public domain.

The use of technology which links or references external data sources is common. While some blockchains are entirely "self-contained," and do not refer to or rely on outside informational sources, many blockchains (or systems of computer programs known as "smart contracts") refer to, rely on, or draw data from external systems, thereby enabling smart contracts to execute based upon inputs and outputs from the real world.  "Oracles" allow a blockchain or blockchain system to access existing data sources, legacy systems, and advanced computations.  More complex systems make use of this structure as well.  Indeed, the vast majority of smart contract use cases in decentralized finance ("DeFi") require knowledge of real-world data and events happening "off-chain" (*i.e.*, from an external informational source).  As a consequence, a decentralized network of linked computers that retrieve information from data sources outside that immediate network is an incredibly common technology.

After receiving the patent registration, Plaintiff reached out to numerous parties in the DeFi field, including Labs, and offered to sell or license its patent. Recognizing that the patent described well-known, long-existing technologies – and was thus worthless – nobody took Plaintiff up on its offers.

---

*2023*, U.S. Patent & Trademark Office, https://www.uspto.gov/dashboard/patents/pendency.html (last visited Oct. 19, 2023).

III.   **PLAINTIFF'S LAWSUIT AGAINST COMPOUND PROTOCOL**

Plaintiff alleges that the Protocol infringes multiple claims on the '797 Patent. Labs has repeatedly advised Plaintiff, however, that the methods and systems set forth in the '797 Patent are invalid as they are obvious and/or anticipated by the prior art. Plaintiff acknowledges that Labs' founder first published an online blog post concerning the Protocol in January 2018, (Compl. ¶ 5), and that Labs launched the Protocol to the Ethereum main net in September 2018.  (Compl. ¶ 9). Though initially administered by Labs, in June 2020 control over the Protocol was turned over to holders of COMP tokens, and the Protocol has operated autonomously ever since.[3]

Plaintiff commenced this suit on October 5, 2022, waiting more than four years after the Protocol had been launched. The Complaint alleges that the Protocol directly infringes the '797 Patent. (Compl. ¶¶ 84-95).  In particular, the exhibits to the Complaint identify as exemplary claims, Claims 1 and 7. (Lin Decl. Exh. C).  Plaintiff also filed a second suit against MakerDAO, a separate protocol also built on the Ethereum blockchain, on the same date.  Like this lawsuit, the Complaint against MakerDAO alleges direct patent infringement of the claims in the '797 Patent.[4] However, the '797 Patent should never have been granted.

Plaintiff's choice to file suit against the Protocol, which is a non-juridical entity, significantly delayed the litigation once it was commenced in October 2022.  On January 18, 2023, the Court *sua sponte* ordered Plaintiff to file a status letter advising the Court concerning service of the Summons and Complaint. (ECF Doc. No. 10). Plaintiff made a letter motion to extend the

---

[3]     Though not specifically germane to this motion to stay, additional background concerning the history of the Compound Protocol and its governance is set forth in the Declaration of Jayson Hobby dated June 23, 2023, which was submitted in support of Intervenor Defendant's Motion to Intervene. (ECF Doc. No. 41)
[4]     *True Return Systems, LLC v. MakerDAO*, Civil Case No. 1:22-cv-08478-VSB (S.D.N.Y.), is currently pending before the Honorable Judge Vernon S. Broderick.  According to the docket in that case, the Court has set a briefing schedule for defendant's motion to dismiss, which is scheduled to be briefed as of December 20, 2023.  (ECF Doc. No. 65).

time for service, which was granted. (ECF Doc. No. 11-12). Because of the unusual nature of attempting to serve a non-juridical entity like the Protocol, Plaintiff moved to serve electronically, (ECF Doc. No. 13), which motion was granted on March 6, 2023. (ECF Doc. No. 20). Plaintiff eventually filed a certificate of service on March 22, 2023 (ECF Doc. No. 21); but since the Protocol is not an entity, but rather just software, it did not respond. After the Court ordered Plaintiff to move for default judgment or show cause why the case should not be dismissed for failure to prosecute, (ECF Doc. No. 22), Plaintiff eventually filed a proposed certificate of default on May 5, 2023. (ECF Doc. No. 27). On that same day, Intervenor Defendant Compound Labs filed a letter motion for leave to file a motion to intervene, (ECF Doc. No. 37), which was granted. (ECF Doc. No. 39). Intervenor Defendant filed the motion on June 6, 2023 (ECF Doc. No. 40). The Court granted the motion for intervention on September 25, 2023 (ECF Doc. No. 45).

## IV.    THE INTER PARTES REVIEW PROCEEDING (IPR)

On or about September 7, 2023, an advocacy organization known as the DeFi Education Fund[5] ("DEF") filed a Petition to Institute an *Inter Partes* Review for the '797 under 37 C.F.R. § 42.100 et seq. (IPR 2023-01388) (Lin Decl. Exh. D).   The Petition seeks review to invalidate all of the claims in the '797 Patent.  The 85-page Petition is supported by a 129-page Declaration by Hudson Jameson, Vice President of Polygon Labs, a blockchain research and development company. (Lin Decl. Exh. E).

*Inter Partes* Review is a trial proceeding held before the Patent Trial and Appeal Board and is governed by 35 U.S.C. §311 et seq. and the accompanying regulations at 37 C.F.R. 42.100 et seq.  A petitioner may, in the first instance, file a petition that requests that the Board institute an IPR to cancel, as unpatentable, one or more claims of a patent on grounds that could be raised

---

[5]        DeFi Education Fund, https://www.defieducationfund.org/ (last visited Oct. 19, 2023).

under 35 U.S.C. §102 (anticipation) or §103 (obviousness) and only on the basis of prior art consisting of patents or printed publications.  35 U.S.C. §311.  An IPR will only be instituted if the Director determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. §314(a).

In enacting the AIA, Congress sought "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs and to create a timely, cost-effective alternative to litigation." *PersonalWeb Techs.*, 2014 WL 116340, at *2 (citation and internal quotation marks omitted). The timing of an IPR is mandated by statute and regulation to take less than eighteen (18) months from the filing of the initial petition. Once a petition to institute an IPR has been filed, the patent holder has three months within which it may file a preliminary response. 35 U.S.C. §313; 37 C.F.R. §42.107. The Board must make a determination as to whether to institute an IPR within three months of receiving the patent holder's response.[6]  35 U.S.C. §314(b).  Moreover, the USPTO is required to issue an IPR determination within one (1) year of the institution of the IPR, with that deadline extendable for good cause only for up to six months.  35 U.S.C. §316; 37 C.F.R. §42.100(c). The petitioner has the burden of proof, by preponderance of the evidence, to establish unpatentability under Sections 102 or 103.# 35 U.S.C. §316(e); 37 C.F.R. §42.1(d).  Start to finish, the entire process is generally expected to take up to eighteen months.

Here, the Petition was filed on September 7, 2023. (Lin Decl. Exh. D).  Plaintiff submitted its preliminary response on October 6, 2023. (Lin Decl. Exh. J).  The PTAB will decide whether or not to institute an IPR by January 6, 2024, which is three (3) months after the filing of the patent

---

[6]     The submission of a preliminary response is optional. If the patent holder elects not to submit one, then the three months to issue a decision on whether to institute an IPR runs from the last date on which a patent holder could have submitted its response.

holder's response.  35 U.S.C. § 314(b).  If the IPR is instituted, then the trial and determination must be completed by January 6, 2025.  35 U.S.C. § 316; 37 C.F.R. 42.100(c).  Accordingly, this Court will have benefit of the IPR proceeding and decision just over a year from now.[7]

The Petition specifically identifies and discusses three particular prior art publications pre-dating the '797 Patent application. These publications are:

- U.S. Pre-Grant Publication No. 2017/0005804 to Zinder (Jan. 5, 2017), directed to a digital asset repository computer system which provides storage in parallel with a blockchain. (Lin Decl. Exh. F; Lin Decl. Exh. D at 9-11, Exh. 1004; Lin Decl. Exh. E at 25-28).

- U.S. Pre-Grant Publication No. 2017/0230189 to Toll (Aug. 10, 2017) / U.S. Application No. 15/423,668 (Feb. 3, 2017), directed to a computer system which interfaces with a blockchain in which blockchain transactions are used to record asset transactions.  (Lin Decl. Exh. G; Lin Decl. Exh. D at 11-13, Exh. 1005; Lin Decl. Exh. E at 28-30).

- U.S. Pre-Grant Publication No. 20170352027 to Zhang et al. (Dec. 7, 2017) / U.S. Application No. 15/515,216 (June 6, 2016), describing how an oracle receives external data from electronic data sources, such as stock ticker data.  (Lin Decl. Exh. H; Lin Decl. Exh. D at 13-14, Exh. 1006; Lin Decl. Exh. E at 30-32).

The remainder of the Petition and supporting Jameson Declaration set forth a lengthy and detailed explanation of how this prior art invalidates the claims based on obviousness and/or anticipation. The grounds set forth in the Petition cover some of the same claims, and some of the

---

[7]    A decision of the IPR is appealable to the Federal Circuit or may be subject to a request for rehearing before the PTAB. 37 C.F.R. §42.71(d).

same arguments, that Labs would ultimately interpose in this litigation. (Labs would also have other independent arguments to raise as well.)

## ARGUMENT

### I.   THE COURT SHOULD EXERCISE ITS DISCRETION AND STAY THIS PROCEEDING PENDING THE IPR

The Court should stay this proceeding pending the DEF's IPR. "A federal district court has the inherent power to stay an action pending inter partes review." *Goodman v. Samsung Elecs. Am., Inc.*, No. 17-cv-5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017) (citing *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) and *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017)). While there is no "*per se* rule that patent cases should be stayed pending [IPR]," there is a "liberal policy" in favor of granting motions to stay. *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-cv-05669 (NSR), 2014 WL 2854656, at *3 (S.D.N.Y. June 20, 2014) (quoting *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *3 (N.D. Cal. June 7, 2007) and *PersonalWeb Techs., LLC*, 2014 WL 116340, at *3). Granting a stay pending IPR "allow[s] the PTO to apply its expertise to these proceedings before considerable judicial resources are expended." *Nike, Inc. v. Lululemon USA Inc.*, No. 22-cv-00082 (RA) (OTW), 2023 WL 2214884, at *1 (S.D.N.Y. Feb. 24, 2023) (quoting *Synkloud Techs., LLC v. Cartessa Aesthetics, LLC*, No. 21-CV-4423 (GRB) (JMW), 2022 WL 1046261, at *4 (E.D.N.Y. Apr. 6, 2022)). The decision whether to grant a stay is within the discretion of the district court. *Goodman*, 2017 WL 5636286, at *2.

Courts in this district consider three factors in deciding a motion to stay pending IPR: (1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will prejudice the non-moving party. *Id.* (citing *Rovi Guides,*

10

*Inc.*, 2017 WL 4876305, at *3).  These factors are "not exclusive" and "in the end, an overarching consideration of the circumstances in their totality governs."  *Nike, Inc*., 2023 WL 2214884, at *1 (quoting *Grecia v. MasterCard, Inc.*, Nos. 15-cv-9059 (RJS), 15-cv-9210 (RJS) & 16-cv-9691 (RJS), 2017 WL 11566955, at *2 (S.D.N.Y. Apr. 3, 2017)).

Here, each of the three factors, and the overarching circumstances in this case, overwhelmingly favor granting a stay in this matter.  Doing so will serve the interests of judicial economy, and allow the Court to take advantage of the PTAB's particular expertise in patents and evaluating prior art.

### A.  A Stay Will Simplify The Issues And Trial In This Action

A stay of this action pending the IPR will, in all likelihood, greatly simplify the issues in this action.  If the PTAB cancels the '797 Patent claims, the need for trial will be completely eliminated.  *See Nike, Inc.*, 2023 WL 2214884, at *1.  If, on the other hand, any patent claims survive, the IPR proceedings will still facilitate trial by providing the court with the USPTO's expert opinion on the complicated blockchain technology that is the subject of the '797 Patent and clarifying the scope of the claims.  *See id.*, at *1-2.

IPR proceedings become part of the patent file, so they are considered valuable intrinsic evidence in any future proceeding involving the patent.  *See, e.g., Evolutionary Intel., LLC v. Sprint Nextel Corp.*, Nos. C-13-04513, C-13-04201, C-13-04202, C-13-04203, C-13-04204, C-13-04205, C-13-04206, C-13-04207 & C-13-03587, 2014 WL 4802426, at *4 (N.D. Cal. Sept. 26, 2014) ("The IPR proceedings will also add to the [] Patent's prosecution history.  Prosecution history is an important part of the intrinsic record relevant to claim construction.  Statements made by [Plaintiff] during the IPR could disclaim claim scope, aid the court in understanding the meaning of the terms, or otherwise affect the interpretation of key terms … Maintaining the stays will allow

the full intrinsic record to be before the court at claim construction.") (internal citation omitted); *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (citations omitted).

In particular, evidence from the IPR can be valuable to the Court's exercise of claim construction. *See, e.g., Aylus Networks*, 856 F.3d at 1362 ("[S]tatements made by a patent owner during an IPR proceeding, … can be considered for claim construction…"); *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-CV-2972, 2015 WL 1034275, at *5 (S.D. Tex. Mar. 10, 2015) (the PTAB's claim construction analysis "serves as further intrinsic evidence that [Plaintiff's] proposed construction is appropriate"); *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-528-JNP-PMW, 2016 WL 4444747, at *2 (D. Utah Aug. 23, 2016) ("Proceeding with claim construction without the benefit of the additional intrinsic record developed during IPR could complicate this case by making it necessary to reconsider certain claim construction issues. However, even if the reexamination does not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court.") (citations, internal quotation marks and brackets omitted).

In this case, the Petition presents issues implicating the validity of all 20 of the '797 Patent claims, with particular focus on specifically identified prior art publications (Lin Decl. Exh. D at 9-14), and setting forth claim construction analysis. (Lin Decl. Exh. D at 16-27).   The IPR

submissions on their face show that the PTAB will be considering a host of specific issues that will also be at issue in any future trial before this Court, to the extent any claims are upheld as valid and there are issues left to be litigated.  As the Petition directly challenges all twenty claims of the '797 Patent on multiple grounds, there can be no real question that the IPR is directly relevant to this litigation.  *See Nanobebe US Inc. v. Mayborn (UK) Ltd.*, No. 21-cv-08444 (JLR), 2023 WL 4993642, at *2 (S.D.N.Y. Aug. 4, 2023) (a stay simplified the case where the IPR proceedings covered the same patents and claims at issue in the infringement litigation); *see also Miics & Partners Am. Inc. v. Toshiba Corp.*, Nos. 14-803-RGA & 14-804-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015) ("As a general matter, with so many claims from so many patents in play, the law of probabilities makes it almost certain that the PTAB will grant at least some of the petitions, and that some of the claims will eventually be rejected or modified, and others of them, even if neither rejected nor modified, will [garner] additional prosecution history that may be relevant to claim construction.").

While Plaintiff may contend that a stay is not available because Labs is not a party to the Petition and therefore would not be subject to express estoppel provisions set forth in 35 U.S.C. § 315(e), the Courts have repeatedly granted stays pending an IPR brought by a non-party because of the potential benefits of the IPR proceeding.[8] *See, e.g.*, *Intellectual Ventures II LLC v. Huntington Bancshares Inc.*, No. 2:13-CV-00785, 2014 WL 2589420, at *4 (S.D. Ohio June 10, 2014) ("Now … that the PTAB likely will apply its expertise to some or all of the arguments at issue in this case, it would defy common sense for this litigation to proceed alongside the IPR

---

[8]    35 U.S.C. §315(e) provides, in pertinent part: "The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 … that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review."

proceedings simply because Defendants are not statutorily prohibited from raising the same or similar arguments as the IPR petitioners."); *Intellectual Ventures II LLC v. SunTrust Banks, Inc.*, No. 1:13-CV-02454-WSD, 2014 WL 5019911, at *3 (N.D. Ga. Oct. 7, 2014) ("Even though the Defendants cannot be statutorily estopped from asserting that the Patents are invalid, a stay is appropriate because the outcome of the IPR proceedings will simplify the issues in this case."); *e-Watch, Inc. v. ACTi Corp.*, No. SA-12-CA-695-FB, 2013 WL 6334372, at *7 (W.D. Tex. Aug. 9, 2013), *report and recommendation adopted by* No. SA-12-CA-695-FB, 2013 WL 6334304, at *7 (W.D. Tex. Aug. 26, 2013) ("It is not necessary . . . to be a party to IPR proceedings for the USPTO's substantive decisions in reexamination proceedings to have an effect of [sic] the patent issues to be litigated . . . ."). The potential benefits of the IPR and the utility of the proceedings and findings would still help simplify proceedings and justify granting a stay, even without the application of Section 315(e).

Finally, even though the Petition has only just been filed and the PTAB has not yet decided whether to institute IPR of the '797 Patent, courts in this district regularly grant pre-institution stays. The reason for this is that "the potential for the PTAB's decision to simplify the issues in [the] litigation outweighs the attendant costs of postponed litigation." *Molo Design, Ltd. v. Chanel, Inc.*, No. 21-CV-01578 (VEC), 2022 WL 2135628, at *2 (S.D.N.Y. May 2, 2022). *See also Nike, Inc.*, 2023 WL 2214884, at *2 (granting pre-institution stay); *Slingshot Printing LLC v. Canon U.S.A., Inc.*, Nos. 22-CV-00123 (HG) (LGD) & 22-CV-01852 (HG) (LGD), 2022 WL 17361232, at *4 (E.D.N.Y. Dec. 1, 2022) (same); *Synkloud Techs.*, 2022 WL 1046261, at *4 (same). Moreover, in this case, a decision on whether or not to institute an IPR will be made no later than January 6, 2024. Accordingly, any delay associated with a stay in the event the PTAB rejects the

IPR request will be very short.  *Evolutionary Intel. LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013).

Accordingly, this factor overwhelmingly weighs in favor of a stay.

### B.     This Proceeding Is In Its Early Stages

"The earlier the stage of the proceedings, the greater the reason to grant a stay."  *Synkloud Techs.*, 2022 WL 1046261, at *3.  Generally, "where the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order, and discovery is well underway, this [ ] factor counsels against granting a stay."  *Molo Design*, 2022 WL 2135628, at *4 (citing *Rovi Guides, Inc.*, 2017 WL 4876305, at *3).  In this case, no substantive proceedings or discovery have taken place.  In fact, Intervenor Defendant Labs has only just entered the case, and has not yet responded to the Complaint, let alone commenced discovery.  The litigation has, in effect, not even begun.  Accordingly, this factor weighs strongly in favor of a stay.

### C.     A Stay Will Not Prejudice Plaintiff

Finally, a stay pending the resolution of the IPR proceeding will not unduly prejudice Plaintiff.  As discussed above, the parties who have appeared in this action have not yet begun discovery or begun litigating the case in any meaningful way.  Mere delay does not constitute prejudice.  *See id.* at *3 (citing *CDX Diagnostics*, 2014 WL 2854656, at *4).  Further, although Plaintiff has previously argued prejudice in the context of the motion to intervene, there is no evidence whatsoever to support the conclusion that Labs' timing with respect to intervention was in any way prejudicial, or that the circumstances could possibly be interpreted as an intent to "gain an unfair advantage," such that the further request for a stay should be denied as prejudicial to Plaintiff. *Goodman*, 2017 WL 5636286, at *3.  To the contrary, Labs' motion to intervene was granted on September 25, 2023; Labs' counsel appeared for the first time in this case at a Court

conference on September 29, 2023, at which time Labs promptly advised the Court of the Petition that was filed on September 7, 2023, and proposed to file a motion to stay pending the IPR.  The Court then set a briefing schedule and Labs has promptly moved to stay, pursuant to the Court's schedule, and very promptly after the filing of the Petition.  *See Synkloud Techs.*, 2022 WL 1046261, at *4 (stay favored where request for stay filed shortly after IPR petition).

Moreover, this is not a case in which Plaintiff would be able to establish prejudice, given that it is merely a patent holder that seeks to license the patent.  As a potential patent licensor, future monetary damages (in the form of a patent license royalty fee) would be a sufficient to remedy any infringement of the '797 Patent.  *See Rovi Guides*, 2017 WL 4876305, at *5 (noting that "Courts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement." (quoting *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014))); *Nanobebe US*, 2023 WL 4993642, at *4 (stay favored where patent holder "did not move for a preliminary injunction and does not contend that money damages could not make it whole").  Moreover, Labs and Plaintiff are not direct competitors (which can heighten the possibility of prejudice), and so there is no danger of prejudice arising out of such competition.  *Rovi Guides*, 2017 WL 4876305, at *4. Accordingly, this factor weighs in favor of a stay.

In any event, any contention by Plaintiff that it will be prejudiced by further delay to await the results of the Petition is frivolous, in view of the long period of time that Plaintiff has waited to enforce its purported patent rights. As Plaintiff admits in the Complaint, the Protocol was released to the public in September of 2018.  It took Plaintiff more than four years to file a lawsuit to purportedly vindicate those rights, and nearly another six months to serve the purported defendant.  It has been more than five years since the '797 Patent was issued, and it could

16

ostensibly take several more years to litigate the instant action.  A decision on whether to institute an IPR will be issued by mid-January, and if that proceeding is granted, then a decision on validity can be expected by January 2025 in the ordinary course. In the context of the history of Plaintiff's ownership of this patent and the alleged infringement, any delay would pale in comparison to Plaintiff's own dilatory tactics.  Plaintiff cannot show that any delay associated with a stay would be prejudicial to Plaintiff.

## CONCLUSION

For the foregoing reasons, Labs respectfully requests that this Court exercise its discretion to stay this proceeding pending the IPR, and grant such other and further relief as may be deemed appropriate in the interests of justice.

Dated:  New York, New York
        October 20, 2023

MORRISON COHEN LLP

By:  */s/ Alvin C. Lin*
     Alvin C. Lin
     Jason P. Gottlieb
     Daniel C. Isaacs
     909 Third Avenue
     New York, New York 10022
     (212) 735-8600

     *Attorneys for Intervenor Defendant Compound Labs, Inc.*

17